845 So.2d 416 (2003)
STATE of Louisiana
v.
Bradley GRAHAM.
No. 2002 KA 1492.
Court of Appeal of Louisiana, First Circuit.
February 14, 2003.
*417 Lewis Murray, Franklinton, Gwendolyn Brown, Baton Rouge, for Plaintiff/Appellee, State of Louisiana.
Frederick Kroenke, Baton Rouge, for Defendant/Appellant, Bradley Graham.
*418 Before: CARTER, C.J., WHIPPLE and CIACCIO,[1] JJ.
WHIPPLE, J.
The defendant, Bradley Graham, was charged by bill of information with attempted second degree murder (count 1), a violation of LSA-R.S. 14:27, 14:30.1; armed robbery (count 2), a violation of LSA-R.S. 14:64; attempted aggravated rape (count 3), a violation of LSA-R.S. 14:27, 14:42; aggravated sexual battery (count 4), a violation of LSA-R.S. 14:43.2; second degree kidnapping (count 5), a violation of LSA-R.S. 14:44.1; and eight counts of aggravated oral sexual battery (counts 6-13), violations of LSA-R.S. 14:43.4.[2] He pled not guilty. The defendant subsequently waived his right to a jury trial and elected to be tried by the trial judge.
Following a bench trial, the defendant was convicted and sentenced as follows: count 1, guilty as charged, sentenced to thirty years at hard labor; count 2, guilty of the responsive offense of simple robbery (a violation of LSA-R.S. 14:65), sentenced to seven years at hard labor; count 3, guilty as charged, sentenced to thirty years at hard labor; count 4, guilty of the responsive offense of sexual battery (a violation of LSA-R.S. 14:43.1), sentenced to ten years at hard labor; count 5, guilty as charged, sentenced to thirty years at hard labor; counts 6 through 9, guilty as charged, sentenced to ten years at hard labor without probation, parole, or suspension of sentence on each count. The defendant was found not guilty on counts 10 through 13. The trial court ordered that all sentences run concurrently. The defendant filed motions for new trial and for postverdict judgment of acquittal, which the trial court denied. Thereafter, the state filed an habitual offender bill of information, seeking to enhance the sentence imposed on the attempted aggravated rape conviction (count 3). After a hearing, the trial court adjudged the defendant a second felony offender. The trial court vacated the previous thirty-year sentence imposed on count 3 and, pursuant to LSA-R.S. 15:529.1, resentenced the defendant to thirty years at hard labor. The defendant filed a motion to reconsider sentence. The trial court denied the motion. Defendant now appeals, arguing insufficient evidence of the attempted second degree murder conviction and that the aggregate thirty-year sentence is excessive.[3] Finding no merit in the assigned errors, we affirm the convictions, the habitual offender adjudication, and the sentences.

FACTS
On the morning of November 11, 2000, J.C. was at home asleep in her bedroom when she was awakened by the defendant (her stepfather) standing over her. The defendant was fondling J.C.'s breasts, stomach and chest. J.C. resisted and requested that the defendant discontinue his inappropriate behavior, but he refused. The defendant crawled on top of J.C., held her down and continued to fondle her. Confused by her stepfather's actions, J.C. asked the defendant, "Why are you doing this to me?" In response to this inquiry, the defendant stated, "You know you want *419 me to do this. You got to do it. You stupid f_____ bitch. You got to do this." J.C. fought to get away from the defendant. The defendant stated, "Don't fight back. You know you want this. Don't fight back. Because I'm going to kill you. I'll kill you if you fight back. Either way, you are going to die. You are just going to die. You don't deserve to live." Despite the threats to her life, J.C. continued to fight. Using his fists, the defendant struck J.C. in her head, chest, stomach and back. The defendant then used a piece of rope to tie J.C.'s arms together. With J.C.'s arms bound, the defendant proceeded to fondle and grope J.C.'s body. He also kissed and licked her face. The defendant forced J.C. to dress up in several different bra and panty outfits that he provided. He also forced J.C. to put on stockings and makeup that he provided.
Next, the defendant forced J.C. into the bedroom that he shared with J.C.'s mother. In the bedroom, the defendant continued the sexual assault. The defendant told J.C. that she would either perform oral sex on him or he would force her to have sexual intercourse with him. According to J.C., when she resisted, the defendant threw her on the ground and hit her so hard that she could not breathe. The defendant threatened to kill J.C. and her mother if J.C. did not honor his sexual demands. The defendant forced J.C. to perform oral sex on him. The defendant sat on the bed, held J.C.'s arms behind her head, shoved her head down and pushed his penis into her mouth. The defendant also used his fingers to penetrate J.C.'s vagina.
The defendant then forced J.C. back to her bedroom. In her bedroom the defendant again demanded that J.C. either have sexual relations with him or perform oral sex on him. The defendant positioned himself on top of J.C. and attempted to insert his penis into her vagina. J.C. pleaded with the defendant and requested that he stop. When the defendant ignored J.C.'s pleas, a struggle ensued. J.C. fought to prevent the defendant from vaginally raping her. The defendant forced his penis into J.C.'s mouth again.
The defendant continued to take J.C. back and forth between her bedroom and her mother's bedroom, repeatedly beating her, attempting to rape her, and forcing her to perform oral sex upon him. J.C. testified that the defendant forced her to perform oral sex on him at least four or five different times. During the final episode of oral sex, the defendant ejaculated in J.C.'s mouth. Because J.C. continued to struggle and fight, each of the defendant's attempts to vaginally rape J.C. were unsuccessful.
Because J.C.'s mother was scheduled to arrive home soon thereafter, the defendant placed a jacket over J.C.'s tied hands to prevent her from moving her arms, and forced her into a tool shed located behind the house. In the shed, the defendant tied J.C.'s hands again, gagged her with a red bandanna, tied her legs together, and wrapped her body up in a cushion and blanket. The defendant then used some rope to tie the blanket in place around J.C. The defendant told J.C. that he was going to move J.C.'s car so that her mother would not know that she was at home. The defendant left J.C. bound and gagged, lying on the shed floor. After the defendant left, J.C. managed to untie herself and escape from the shed. J.C. ran to a nearby highway where a passing motorist stopped and transported her to the Bogalusa Police Department.

SUFFICIENCY OF THE EVIDENCE
In this assignment of error, the defendant contends that the evidence adduced at trial was insufficient to support the *420 conviction of attempted second degree murder because it failed to establish that he had the specific intent to kill J.C.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also LSA-C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). The Jackson standard of review, incorporated in LSA-C.Cr.P. art. 821(B), is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides the fact-finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. Hendon, 94-0516, p. 4 (La.App. 1st Cir.4/7/95), 654 So.2d 447, 449.
The offense of second degree murder is defined in LSA-R.S. 14:30.1(A) in pertinent part, as the killing of a human being: (1) when the offender has a specific intent to kill or to inflict great bodily harm; or (2)(a) is engaged in the perpetration or attempted perpetration of aggravated rape even though the offender has no intent to kill or to inflict great bodily harm.
Under LSA-R.S. 14:27(A), a person is guilty of an attempt to commit an offense when he has a specific intent to commit a crime and "does or omits an act for the purpose of and tending directly toward the accomplishing of his object."
The gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Huizar, 414 So.2d 741, 746 (La.1982). A conviction of attempted second degree murder requires a finding that the defendant had the specific intent to kill. State v. Franklin, 95-1876, p. 7 (La.1/14/97), 686 So.2d 38, 42.
Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as defendant's actions or facts depicting the circumstances. State v. Cummings, 99-3000, p. 3 (La.App. 1st Cir.11/3/00), 771 So.2d 874, 876.
In its reasons for judgment on the attempted second degree murder conviction, the trial court stated:
I will then go to the attempted second degree murder. Again, Title 14, Section 27 which is attempt. And Title 14, Section 30.1, which is second degree murder. Second degree murder is the killing of a human being, and here it has to be the attempted killing because this is an attempt. So second degree murder is the killing of a human being when the offender has a specific intent to kill, or to inflict great bodily harm, or when the offender is engaged in the perpetration or attempted perpetration of aggravated rape.
Since I have found him guilty of aggravated rape [sic], I find him guilty of attempted second degree murder.
It is clear that the trial court convicted the defendant of attempted second degree murder under the felony-murder provision for unintentional killings provided in LSA-R.S. 14:30.1(A)(2)(a). After finding the defendant guilty of the offense *421 of attempted aggravated rape, the trial court proceeded to convict the defendant of attempted second degree murder based upon the commission of the underlying felony offense of attempted aggravated rape. The trial court's oral reasons are silent with respect to a finding of specific intent to kill. It is well settled in Louisiana jurisprudence that the crime of attempted second degree murder cannot be based upon an underlying felony. State v. Guccione, 96-1049, p. 17 (La.App. 5th Cir.4/29/97), 694 So.2d 1060, 1068, writ denied, 97-2151 (La.3/13/98), 712 So.2d 869. An attempt to commit second degree murder requires that the offender possess the specific intent to kill and commit an overt act tending toward the accomplishment of that goal. LSA-R.S. 14:27(A); 14:30.1(A)(1). This is inconsistent with the felony-murder theory of an unintentional killing as provided in LSA-R.S. 14:30.1(A)(2)(a). Therefore, the trial court erred in relying on this provision to convict the defendant of attempted second degree murder. Nonetheless, on review, we find the trial court's ultimate conclusion that the defendant was guilty of attempted second degree murder to be correct, and we affirm the defendant's conviction, albeit on a different basis. Herein, we find the State did establish by sufficient evidence that the defendant had the specific intent to kill the victim.
For the attempted second degree murder conviction to stand, the evidence presented at trial must establish that the defendant had the specific intent to kill J.C. and that he did something tending toward the accomplishment of this goal. The defendant avers that the evidence presented at trial in this case failed to make such a showing. We disagree. Upon reviewing the testimony and evidence contained in the record before us, we are convinced that the state sufficiently established that the defendant had the specific intent to kill J.C.
The testimony in this case showed that the defendant repeatedly and forcefully struck J.C. J.C. testified that when she attempted to flee, the defendant threw her onto the ground and struck her so hard that she could not breathe. The defendant held J.C. down and continued to violently beat her over an extended period of time. The defendant repeatedly struck her and delivered blows to her head, stomach, and back.
The testimony further establishes that the defendant repeatedly threatened to take J.C.'s life. According to J.C., the defendant told her, "You are going to die. I'm going to kill your mom. I'm going to kill you. You are going to die. You might as well just go with it." Later, when J.C. struggled to resist the defendant's sexual attack, he stated, "I'm going to kill you. You might as well ... do it because you are not going to live anyway." J.C. also testified that at some point during the ongoing attack the defendant armed himself with a knife. Moreover, he specifically told J.C. that he was going to use the knife to "cut [her] up in to pieces." Although J.C. was eventually able to escape before the defendant completed his stated plan, the evidence shows the defendant gagged, bound and concealed J.C. in a nearby shed to avoid detection by her mother, who was expected to arrive before the defendant could complete his violent mission.
Viewing this evidence in a light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that the defendant specifically intended to kill J.C. and that the defendant acted directly toward accomplishing his objective. The defendant violently attacked J.C. and beat her endlessly over an extended period of time. The defendant's repeated verbal threats to take *422 J.C.'s life, and his actions in arming himself with a knife, coupled with the force and duration of his attacks upon her clearly established the defendant's specific intent to kill as required to support the attempted second degree murder conviction. This assignment of error has no merit.

EXCESSIVE SENTENCE
In this assignment of error, the defendant contends the trial court imposed excessive sentences. Specifically, defendant asserts that the thirty-year aggregate sentence imposed in this case is unconstitutionally excessive.
Article I, Section 20 of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. A sentence is unconstitutionally excessive if it is grossly disproportionate to the severity of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276, 1280 (La.1993). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288, 291 (La.1985). Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979); State v. Lanieu, 98-1260, p. 12 (La.App. 1st Cir.4/1/99), 734 So.2d 89, 97, writ denied, 99-1259 (La.10/8/99), 750 So.2d 962. However, a trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lobato, 603 So.2d 739, 751 (La. 1992).
The Louisiana Code of Criminal Procedure sets forth items that must be considered by the trial court before imposing sentence. LSA-C.Cr.P. art. 894.1. The trial court need not cite the entire checklist of article 894.1, but the record must reflect that it adequately considered the criteria. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990). In light of the criteria expressed by article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1st Cir. 1988). Remand is unnecessary when a sufficient factual basis for the sentence is shown. State v. Lanclos, 419 So.2d 475, 478 (La.1982).
The defendant in this case was sentenced as follows: count 1, attempted second degree murder, thirty years at hard labor; count 2, simple robbery, seven years at hard labor; count 3, attempted aggravated rape, thirty years at hard labor; count 4, sexual battery, ten years at hard labor; count 5, second degree kidnapping, thirty years at hard labor; counts 6 through 9, aggravated oral sexual battery, ten years at hard labor without probation, parole, or suspension of sentence on each count. The trial court ordered that all sentences run concurrently.
We have reviewed each of the sentences imposed herein and do not find any of them to be excessive under the facts and circumstances of this case. Because the trial court ordered that the sentences run concurrently and because the defendant primarily complains of the excessiveness of the aggregate thirty-year sentence, we will discuss only the sentences imposed on the offenses of attempted second degree murder, attempted aggravated rape and second degree kidnapping.
*423 A sentence for attempted second degree murder ranges from ten to fifty years at hard labor without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:27(D)(1) and 14:30.1(B). The attempted aggravated rape conviction carries a penalty of imprisonment at hard labor for not less than ten years nor more than fifty years. LSA-R.S. 14:27(D)(1) and 14:42(D)(1). As a second felony offender, on this conviction, the defendant faced an enhanced sentence of twenty-five to one hundred years. LSA-R.S. 14:27(D)(1) and 14:42(D)(1); 15:529.1(A)(1)(a). The penalty exposure for the second degree kidnapping conviction was imprisonment at hard labor for five to forty years. LSA-R.S. 14:44.1(C). The court imposed concurrent thirty-year sentences on each of these convictions. Even after adjudicating the defendant a second felony offender on the attempted aggravated rape conviction, the trial court vacated the previously imposed thirty-year sentence and resentenced the defendant to the same term of thirty years.
Upon reviewing the record and the potential sentences for each of the convictions, we do not find the sentences imposed to be excessive in this case where the defendant violently beat, sexually assaulted, bound, gagged, kidnapped and hid his teenaged stepdaughter, while armed with a weapon. The record adequately supports the sentences imposed. This assignment of error lacks merit.
For the foregoing reasons, the defendant's convictions, habitual offender adjudication, and sentences are affirmed.
CONVICTIONS, HABITUAL OFFENDER ADJUDICATION, AND SENTENCES AFFIRMED.
NOTES
[1] Judge Philip C. Ciaccio, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The crime of aggravated oral sexual battery, formerly LSA-R.S. 14:43.4, was repealed by 2001 La. Acts No. 301, § 2. Such conduct now constitutes either aggravated rape or forcible rape. See LSA-R.S. 14:42(A) and 14:42.1(A), as amended by 2001 La. Acts No. 301, § 1.
[3] The defendant does not contest the convictions on counts 2-9.