906 So.2d 450 (2005)
STATE of Louisiana
v.
Paul R. MONTECINO, Jr.
No. 2004 KA 0892.
Court of Appeal of Louisiana, First Circuit.
February 11, 2005.
Writ Denied June 3, 2005.
*451 Walter Reed, District Attorney, Covington, by Dorothy A. Pendergast, Special Appeals Counsel, Metairie, Counsel for Plaintiff/Appellee State of Louisiana.
Michael L. Thiel, Amite, Counsel for Defendant/Appellant Paul R. Montecino, Jr.
Before: GUIDRY, GAIDRY, and McCLENDON, JJ.
GAIDRY, J.
The defendant, Paul R. Montecino, Jr., was originally charged by bill of information with two counts of conspiracy to commit first degree murder, in violation of La. R.S. 14:26 and La. R.S. 14:30. He entered a plea of not guilty on both charges. The trial court denied the defendant's motion to suppress. The State amended the bill of information as to count one, charging the defendant with attempted first degree murder, a violation of La. R.S. 14:27 and La. R.S. 14:30. The defendant entered a plea of not guilty to count one, as amended. Prior to trial, the State severed the charge in count two for trial at a later date. The defendant waived his right to a trial by jury. After a bench trial (on count one only), the defendant was found guilty as charged.[1] The defendant was sentenced to thirty-five (35) years imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence. The defendant denied the allegations of the multiple offender bill of information, previously filed by the State. After a hearing, the defendant was adjudicated a third felony habitual offender.[2] Subsequently, the trial court vacated the previously imposed sentence and sentenced the defendant to forty (40) years imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence. The defendant now appeals, arguing that the evidence was insufficient to support his conviction. For the following reasons, we affirm the conviction, habitual offender adjudication, and sentence.

STATEMENT OF FACTS
On September 7, 2001, Rex D. Gott, an inmate at the St. Tammany Parish Jail, executed a request form that included the following language: "I have some information about a murder. The man that comited (sic) the murder wants me to kill the only whitnes (sic) against him." That same day, Captain Greg Longino, who was the assistant warden at the St. Tammany Parish Jail, received the request form and met with Gott. According to Gott, the defendant, who was also an inmate at the St. Tammany Parish Jail, ultimately informed Gott that he shot Albert Hildebrand and that he wanted Gott to kill Maria Wekawitz, the only witness to the shooting. The defendant offered Gott $10,000.00 in exchange for the murder of Wekawitz. The defendant drafted a map that included places where Wekawitz frequented. After a brief meeting with Gott, Longino contacted *452 the detective's division of the St. Tammany Parish Sheriff's Office.
Sergeant Brian Ocall of the St. Tammany Parish Sheriff's Office met with Gott in the warden's office at the parish jail. Ocall made arrangements for Gott to return to the tier while wearing a recording device. Gott agreed to wear the device and, at approximately 3:30 p.m., returned to the tier where the defendant was located. Ocall was able to observe Gott and the defendant via the jail monitoring system. When Gott returned to the tier, he told the defendant that he was "going home, that I had made a PR bond." During the recorded conversation, Gott specifically told the defendant that he needed some "confirmation cash." Gott further stated as follows, "I'm saying, I'm just saying I need that f____ money. I need some money up front, if I'm going to wax this f____ chick for you, I need some money up front, you know." In response, the defendant stated as follows,
Whatever. I'm going to give you, I'm going to give you enough to get started. I'm going to give you maybe enough for a room, enough for a nice outfit to wear so you can fool her and enough for a f____ room to pull it off. And enough to get some cocaine and that's all I can do dude.
The defendant also questioned Gott concerning the whereabouts and the contents of the map. The defendant presented Gott with a note containing the name, address, and contact number for an individual, later identified as Robert Barron, whom Gott was supposed to contact when he was released. The defendant also jotted "$300.00" and "1 Dress outfit" on the note and signed his name. At approximately 4:15 p.m., Gott returned to the warden's office and allowed Ocall to recover the audiotape and recording device. Gott was released from jail on that date. According to Gott, the defendant planned to contact Barron and arrange for him to provide Gott with money and clothing. The defendant stated that he would not inform Barron of the reason that he needed to give the money to Gott. A telephone call from the jail to Barron's residence was documented to have taken place on September 7 at 5:40 p.m.
On September 13, 2001, Ocall met with Gott and arranged for him to contact Barron using the information that the defendant had provided. Gott ultimately reached Barron and, during a recorded conversation, Gott and Barron made plans to meet on September 15, the following Saturday. Further telephone calls from the jail to Barron's residence were documented to have taken place on September 13 at 6:26 p.m. and 6:49 p.m.
On Saturday, September 15, in the presence of Ocall, Gott contacted Barron by mobile phone and confirmed their meeting during the recorded conversation. At approximately 11:00 a.m., Gott, along with an undercover police officer, met with Barron in the French Quarter in New Orleans, Louisiana at Barron's residence. Gott was equipped with a recording and listening device. During this meeting, Barron gave Gott $100.00 and warned him that the defendant was not trustworthy and would "get you in trouble." Barron also stated as follows, "Here you go now, that's the best I can do, I don't want any part of this, I don't want to know anything about it. Let me tell you once more, if your (sic) smart you won't have anything to do with it."
After Gott and the undercover police officer vacated Barron's residence, Ocall and a police sergeant contacted Barron. The defendant was ultimately charged with the attempted murder of Maria Wekawitz.

*453 ASSIGNMENT OF ERROR
In his sole assignment of error, the defendant avers that the trial court erred in finding him guilty of attempted first degree murder when there was insufficient evidence that the defendant did or omitted an act for the purpose of and tending directly toward the accomplishing of his object. The defendant contends that all of the evidence adduced at the trial pertained to the act of solicitation and constituted nothing more than evidence of preparation.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La.Code Crim. P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). The Jackson standard of review, incorporated in La.Code Crim. P. art. 821(B), is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the trier of fact must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. Graham, XXXX-XXXX, p. 5 (La.App. 1st Cir.2/14/03), 845 So.2d 416, 420.
Louisiana Revised Statutes 14:27(A) provides:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Louisiana Revised Statutes 14:30(A)(4) provides in part:
First degree murder is the killing of a human being:
(4) When the offender has specific intent to kill or inflict great bodily harm and has offered, has been offered, has given, or has received anything of value for the killing.
The gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Huizar, 414 So.2d 741, 746 (La.1982). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow from his act or failure to act. La. R.S. 14:10(1). Specific intent may be proven by direct evidence, such as statements by a defendant; or by inference from circumstantial evidence, such as defendant's actions or facts depicting the circumstances. State v. Cummings, 99-3000, p. 3 (La.App. 1st Cir.11/3/00), 771 So.2d 874, 876.
This court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder's determination of guilt. Cummings, 99-3000 at p. 3, 771 So.2d at 876. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Cummings, 99-3000 at p. 3, 771 So.2d at 876.
Sergeant Ocall was the lead detective assigned to investigate the murder of Hildebrand. According to Ocall, three people were present when Hildebrand was shot: Hildebrand, Wekawitz, and the defendant. Ocall took a statement from Wekawitz wherein she identified the defendant as the shooter. The defendant was arrested and charged by a grand jury indictment with the second degree murder of Hildebrand. While imprisoned at the St. *454 Tammany Parish Jail, the defendant made contact with Gott. According to Gott, the defendant initially gave him a factual account of the shooting of Hildebrand wherein Wekawitz was the shooter. The defendant later stated that he was the shooter and that Wekawitz was the only witness to the shooting. The defendant offered Gott $10,000.00 to kill Wekawitz. Gott stated that he never intended to kill Wekawitz, but did not tell the defendant that.
Herein, the defendant does not contest the sufficiency of the evidence as to the specific intent to kill. The defendant's sole argument is that there is insufficient evidence of the commission of an overt act tending toward the accomplishment of the goal. The defendant claims that providing a map and arranging for payment, even if taken as credible facts, constitute nothing more than preparation.
In finding the defendant guilty, the trial court, in part, stated as follows,
Clearly, Montecino had specific intent to commit the first degree murder of Maria Wekawitz. He asked Gott to kill her, provided a map, set up a meeting between Gott and Barron so Gott could receive what has been described as good faith money. The fact that a murder was never completed does not negate the fact that the defendant attempted to commit the crime and took distinct steps towards accomplishing his object. The actions that Montecino took were more than mere preparation. The defendant put in motion by his own acts a course that very well would have led to the death of Maria Wekawitz if Gott had not (sic) followed his instructions.
We agree with the trial court's reasoning. The defendant concocted a plan wherein he negotiated with Gott, the would-be hit man, for Wekawitz's murder in exchange for $10,000.00. The defendant drafted and provided Gott with a map that detailed the location of areas frequented by Wekawitz. The defendant agreed to arrange for Gott to receive money from Barron to be used in the perpetration of the murder of Wekawitz. The defendant provided Gott with contact information for Barron. During the initial recorded telephone conversation between Gott and Barron, Barron confirmed that the defendant had contacted him from jail and had informed him that Gott would be contacting him. Via the defendant's arrangements, Gott met with Barron and received $100.00 in cash to be used in the perpetration of the murder. Thus, the defendant committed several overt acts tending directly toward the accomplishment of the murder of Wekawitz.
The acts outlined above constitute more than mere preparation. The State presented sufficient evidence that the defendant had the specific intent to kill Wekawitz, offered something of value to someone else to handle the commission of the murder, and performed acts that tended directly towards the accomplishing of his object. It is immaterial whether, under the circumstances, the defendant's purpose would have actually been accomplished. This assignment of error is without merit.
The defendant's conviction, habitual offender adjudication, and sentence are all affirmed. Costs of this appeal are assessed to the defendant, Paul Montecino, Jr.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.
McCLENDON, J., concurs and assigns reasons.
McCLENDON, J., concurs.
Based on the specific facts of this case, I concur with the result reached by the majority.
NOTES
[1] Before the verdict was rendered, the trial court denied the defendant's oral motions for judgment of acquittal and for a mistrial.
[2] The defendant's predicate convictions consist of a prior guilty plea to possession of cocaine in the Orleans Parish Criminal District Court (case number 396454) on December 3, 1998, and a prior guilty plea to possession of cocaine in the 24th Judicial District Court (case number 975623) on February 11, 1998. Both predicate convictions are violations of La. R.S. 40:967.