<u>NOT DESIGNATED FOR PUBLICATION</u>

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2020 KA 1054

STATE OF LOUISIANA

VERSUS

JERRY LAVELLE VINCE

**Judgment Rendered:** **OCT 0 8 2021**

\* \* \* \* \* \*

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket Number 603564
Honorable Scott C. Gardner, Judge Presiding

\* \* \* \* \* \*

Warren L. Montgomery
District Attorney
J. Bryant Clark, Jr.
Assistant District Attorney
Covington, Louisiana

Counsel for Appellee
State of Louisiana

Lieu T. Vo Clark
Mandeville, Louisiana

Counsel for Defendant/Appellant
Jerry Lavelle Vince

\* \* \* \* \* \*

**BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.**

**GUIDRY, J.**

The defendant, Jerry Lavelle Vince, was charged by bill of information with molestation of a juvenile by virtue of a position of control or supervision (victim under the age of thirteen), a violation of La. R.S. 14:81.2[1] (count one), and sexual battery (victim under the age of thirteen), a violation of La. R.S. 14:43.1(C)(2) (count two). A jury found the defendant guilty as charged on both counts. On each count, the trial court sentenced the defendant to ninety-nine years imprisonment at hard labor, with twenty-five years to be served without the benefit of probation, parole, or suspension of sentence, to run concurrently. The trial court denied a motion to reconsider sentence filed by the defendant. The defendant now appeals, assigning error in a counseled brief to the denial of his motion to reconsider sentence and the constitutionality of the sentences. In a pro se brief, he further assigns error to the denial of his motion for a jury instruction requiring unanimous jury verdicts and to the admission of trial testimony regarding other inappropriate acts by the defendant. For the following reasons, we affirm the convictions and sentences.

## STATEMENT OF FACTS

Sometime in 2007 or 2008, the defendant married L.B. and became the stepfather of L.P. (the victim), L.B.'s daughter from a previous relationship.[2] L.P. was approximately four years old at the beginning of the marriage and approximately ten to eleven years old when the marriage ended six to seven years later. In 2011 or 2012, the family moved to a home on Magnolia Drive in

---

[1] The bill of information alleges the defendant committed count one on or between February 13, 2010, and February 12, 2015. The applicable statute, La. R.S. 14:81.2, was amended during that time. At the beginning of the stated period, the applicable sentencing provision was designated as La. R.S. 14:81.2(E)(1). Later, after the statute was amended in 2011, the applicable sentencing provision was redesignated as La. R.S. 14:81.2(D)(1). The pertinent portions of the statute were not otherwise affected by the amendments.

[2] L.P., the victim, was born on February 13, 2004. Based on the approximate dates listed in the bill of information, she was between the ages of six and ten years old at the time of the offenses. We will use initials to identify or refer to the victim of the instant offenses, other minor victims referenced in this case, and immediate family members. See La. R.S. 46:1844(W).

2

Covington, where they lived until L.B. and the defendant separated, about two years later.

L.P., who turned sixteen years old during the three-day trial, testified at trial and participated in a pretrial interview at the Kid's Hub Child Advocacy Center. According to L.P., while they were living on Magnolia Drive, on multiple occasions, the defendant used his private part to touch and rub her private part, used his hand to touch and rub her private area, and made her touch and rub his private area with her hand. She stated that the touching was underneath her clothing and the defendant's clothing, and she noted that the defendant would pull down her lower clothing and panties. She used a diagram to identify her private part or area as her "vagina" and the defendant's private part as his "penis." She also stated that she felt a "nasty", "clear white" substance on the defendant's penis when she was made to touch him. L.P. stated that the acts began occurring when she was about six or seven years old, that the last incident occurred when she was about eight or nine years old, and that the defendant would tell her not to tell her mother about the incidents. When she was fourteen years old, L.P. told a school counselor about the incidents. The State also presented testimony to show the defendant committed inappropriate acts involving three other children when they were under the age of seventeen.

## PRO SE ASSIGNMENT OF ERROR NUMBER ONE

In pro se assignment of error number one, the defendant concedes that at the time of the trial in this case, La. C.Cr.P. art. 782 allowed for the jury to be instructed that he could be convicted by a less than unanimous vote. He notes, however, that prior to trial, his counsel filed a motion requesting the trial court to instruct the jury that any verdict must be returned unanimously. The trial court denied his motion and subsequently instructed the jury that ten concurring jurors were required to reach a verdict. Based on the non-unanimous jury concurrence

3

instruction, the defendant now argues that he is entitled to a new trial at which the jurors are instructed and required to reach a unanimous verdict to convict. He contends that his trial was unconstitutionally and structurally infirm "regardless of the precise vote count ultimately rendered."

The defendant argues that in light of the United States Supreme Court's decision in Ramos v. Louisiana, ___ U.S. ___, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020), it is now clear the trial court erred in denying his request to require the jurors to return unanimous verdicts.[3] The defendant concedes that the jury verdicts were unanimous in this case. However, he suggests that the last two jurors to vote only acquiesced in the guilty verdicts, as a concurrence of ten jurors had already been reached, and thus, their votes would have no effect on the verdicts. The defendant alternatively argues that the non-unanimous jury instruction constituted structural error in the same way that a flawed reasonable doubt instruction does. In this regard, the defendant notes that all persons convicted when the jury is given a flawed reasonable doubt instruction are entitled to a new trial without showing that the guilty verdict rendered was actually attributable to the flawed instruction. He contends that the error in this case is similarly not subject to a harmless error analysis.

In the proceedings below, the defendant filed a "Motion for a Jury Instruction Requiring a Unanimous Jury Verdict." Therein, he noted the amendment to the Louisiana constitution requiring unanimous jury verdicts to convict some hard felony offenders, while requiring a ten of twelve concurrence to

---

[3] In Ramos, rendered on April 20, 2020, the United States Supreme Court found that the Sixth Amendment right to a jury trial, as incorporated against the States by the Fourteenth Amendment, requires a unanimous verdict to convict a defendant of a serious offense. Ramos, 140 S.Ct. at 1397. The jury trial herein took place prior to the decision in Ramos. Prior to Ramos, non-unanimous verdicts were allowed under La. Const. art. I, § 17 and La. C.Cr.P. art. 782, and the circumstances of this case.

convict others.[4] The defendant argued that the "double standard" was a "per se Constitutional violation" and asked the trial court to provide a remedy by instruction or by granting a new trial in the event of a non-unanimous jury verdict. In the alternative, the defendant argued that a non-unanimous verdict would deprive him of equal protection of the law and due process of law in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2 and 3 of the Louisiana Constitution. As previously stated, the trial court denied the motion.

Herein the verdicts convicting the defendant of serious offenses were, in fact, unanimous on both counts. Accordingly, Ramos is inapplicable to the instant case, as the opinion indicates the ruling applies to "defendants convicted of felonies by *nonunanimous* verdicts whose cases are still pending on direct appeal." See Ramos, 140 S.Ct. at 1406. (emphasis added).

Moreover, we disagree with the defendant's assertion that the non-unanimous jury instruction is a structural error. In State v. Langley, 06-1041, pp. 5-6 (La. 5/22/07), 958 So. 2d 1160, 1164, cert. denied, 552 U.S. 1007, 128 S.Ct. 493, 169 L.Ed.2d 368 (2007), the Louisiana Supreme Court distinguished between "trial errors," which may be reviewed for harmless error, and "structural errors," which defy analysis by harmless error standards. It stated that structural defects occur in only "a very limited class of cases," which include: (1) the total deprivation of the right to counsel; (2) a biased trial judge; (3) unlawful exclusion of grand jurors of defendant's race; (4) denial of self-representation at trial; (5) denial of a public trial; and (6) a defective reasonable doubt instruction. Langley,

---

[4] Specifically, the defendant identified the provisions of La. Const. art. I, § 17(A) and La. C.Cr.P. art. 782(A), as amended in 2018, requiring unanimous jury verdicts for cases in which the punishment is necessarily confinement at hard labor if the offense was committed on or after January 1, 2019. However, for an offense committed before January 1, 2019, in which the punishment is necessarily confinement at hard labor, as in the instant case, a concurrence of ten of twelve jurors was required to render a valid verdict.

06-1041 at 11, 958 So. 2d at 1167. The Langley Court stated, "[w]hen the Supreme Court speaks of a structural defect, it means that 'the entire conduct of the trial from beginning to end is obviously affected by the [error].'" Langley, 06-1041 at 12, 958 So. 2d at 1167.

Initially, we note that the assigned issue, unlike a defective reasonable doubt instruction, does not fall within any of the six classes of cases enumerated by the Langley Court.[5] Further, in addition to the jury instruction being based on the law in effect at the time, the jury returned unanimous guilty verdicts despite the trial court's instruction that a concurrence of ten was needed to reach a verdict. Thus, as unanimous verdicts were returned in this matter, the denial of the defendant's motion for a unanimous jury verdict instruction did not affect the substantial rights of the defendant. See La. C.Cr.P. art. 921; State v. Magee, 20-0096, pp. 8-9 (La. App. 1st Cir. 11/6/20), 2020 WL 6538506, at *4 (unpublished); State v. Williams, 20-46, pp. 61-62 (La. App. 5th Cir. 12/30/20), 308 So. 3d 791, 836-37, writ denied, 21-00316 (La. 5/25/21), 316 So. 3d 2; State v. Primeaux, 19-841, pp. 20-21 (La. App. 3d Cir. 10/21/20), 305 So. 3d 1014, 1026-27, writ denied, 21-00099 (La. 4/20/21), 313 So. 3d 1256. Thus, we find no merit in pro se assignment of error number one.

## PRO SE ASSIGNMENT OF ERROR NUMBER TWO

In pro se assignment of error number two, the defendant argues that the trial court abused its discretion in permitting the State to adduce testimony, pursuant to La. C.E. art. 412.2, from three witnesses regarding inappropriate behavior and actions by the defendant occurring when they were minors. He notes that he was tasked with having to present a defense to the instant accusations along with three

---

[5] Conversely, a constitutionally deficient reasonable doubt jury instruction is among the very limited class of cases in which structural error has been recognized. Sullivan v. Louisiana, 508 U.S. 275, 281, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993) ("But the essential connection to a 'beyond a reasonable doubt' factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates *all* the jury's findings.").

other sets of accusations, which he contends were not prosecuted due to lack of evidence or an issue with credibility. The defendant argues that "[t]his court must determine that these 'other crimes' were submitted to the jury simply to inflame the jury and to misrepresent [him] as a 'bad person' in general." He claims that as there was insufficient evidence to pursue a conviction, the additional allegations were "back-doored" by the State in order to obtain a conviction in this matter. The defendant contends that the evidence was more prejudicial than probative and further describes the testimony as "quite remarkable and unbelievable." He specifically questions S.M.'s claims that he attempted to secretly photograph and film her in the bathroom of his home. He notes S.M. testified "the phone had only taken a picture of her feet[,]" such that someone had to be holding the device. He further attempts to discredit S.M.'s testimony by pointing out that a button would need to be pressed on any device placed in the bathroom in order to have recorded or photographed S.M. as alleged.[6]

The defendant also argues that he was entitled to a hearing outside of the presence of the jury to determine the admissibility of the uncharged conduct, contending Article 412.2 is vague in this regard. He argues that to the extent that Article 412.2 is otherwise interpreted, the code article denied him his right of due process of the law. He concludes that Article 412.2, by providing authority for the admission of evidence of lustful disposition, violates his rights to a fair trial, to due process of law, to be free from cruel and unusual punishment, and to equal protection of the law. Concluding that the verdict was attributable to the evidence

---

[6] S.M. testified that she knew the victim because his kids attended her grandmother's daycare, and that she and L.P. were friends.

of the other alleged acts, the defendant requests that this matter be remanded for a new trial omitting the evidence at issue.[7]

Prior to trial, the State filed notice that it intended to introduce evidence of "similar crimes" in sex offense cases, pursuant to Article 412.2 or alternatively La. C.E. art. 404(B), detailing the other acts introduced at trial through the testimony of the alleged victims and their mothers. The defense counsel filed a motion in limine, arguing that the other crimes evidence was not relevant to the offenses in this case, that the evidence lacks probative value, and that the evidence was being introduced to inflame the jury's passion against the defendant. Before jury selection, the State and defense counsel submitted their motions without argument, and the trial court granted the State's motion.

Under La. C.E. art. 402, all relevant evidence is admissible. However, under La. C.E. art. 403, otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." Evidence is deemed relevant if such evidence has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401.

Evidence of other crimes, wrongs, or acts is generally inadmissible to impeach the character of the accused. La. C.E. art. 404(B); see State v. Talbert, 416 So. 2d 97, 99 (La. 1982); State v. Prieur, 277 So. 2d 126, 128 (La. 1973). However, such evidence may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. La. C.E. art.

---

7 To the extent the defendant attempts to challenge the constitutionality of Article 412.2, we note that it is well settled that a constitutional challenge may not be considered by an appellate court unless it was properly pleaded and raised in the trial court below. A party must raise the unconstitutionality in the trial court, the unconstitutionality must be specially pleaded, and the grounds outlining the basis of unconstitutionality must be particularized. See State v. Hatton, 07-2377, p. 13 (La. 7/1/08), 985 So. 2d 709, 718-19. In the instant case, the defendant did not raise a constitutional challenge to La. C.E. art. 412.2 in the trial court, and thus, this claim is not properly before this court. Id.

404(B)(1). When a defendant is charged with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of his other acts which involve sexually assaultive behavior or acts which indicate his lustful disposition toward children is admissible if the court determines that, pursuant to La. C.E. art. 403, its probative value outweighs its prejudicial effect. La. C.E. art. 412.2(A); see State v. Wright, 11-0141, pp. 7-12 (La. 12/6/11), 79 So. 3d 309, 314-317. Article 412.2 was a legislative response to earlier decisions from the Louisiana Supreme Court refusing to recognize a "lustful disposition" exception to the prohibition of other crimes evidence under La. C.E. art. 404. Id. at 13, 317.

In a case in which the State intends to offer evidence under the provisions of Article 412.2, the prosecution shall, upon request of the accused, provide "reasonable notice" in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes. La. C.E. art. 412.2(B). However, the reasonable notice requirement of Article 412.2 does not require that the trial court conduct a hearing on the admissibility of that evidence prior to trial. State v. Williams, 02-1030, p. 5 (La. 10/15/02), 830 So. 2d 984, 987. Prior crimes differing from those at issue in a prosecution are still probative to establish a defendant's "lustful disposition" toward children. State v. Dawson, 19-1612, p. 16 (La. App. 1st Cir. 11/17/20), 316 So. 3d 77, 89, writ denied, 21-00217 (La. 5/4/21), 315 So. 3d 222.

Further, it is not necessary, for purposes of Article 412.2 testimony, for defendant to have been charged, prosecuted, or convicted of the "other acts" described. The burden on the State at the instant trial regarding the prior acts was to prove them by a preponderance of the evidence, not beyond a reasonable doubt as required to obtain a conviction. Finally, a trial court's ruling on the admissibility of the additional other crimes evidence will not be disturbed absent

an abuse of discretion. Dawson, 19-1612 at 16-17, 316 So. 3d at 89; see also State v. Friday, 10-2309, p. 14 (La. App. 1st Cir. 6/17/11), 73 So. 3d 913, 925, writ denied, 11-1456 (La. 4/20/12), 85 So. 3d 1258.

Herein, the State introduced evidence at trial to show the defendant committed inappropriate acts involving three other minor females. In particular, the State presented the testimony of three other victims and their mothers. Specifically, S.M., who was eighteen years old at the time of the trial, testified that when she spent the night with L.P. at the house on Magnolia Drive, the defendant's tablet was on the windowsill above the toilet, in front of the shower, while she was in the bathroom taking a shower. S.M. testified that the tablet was positioned such that the camera had a view, but that the recording function was not on at the time.

S.M. further testified that the next day, when she was changing into a bathing suit, she saw the tablet in the bathroom again, positioned over the mirror, facing her. She removed the tablet and observed that it was recording video at the time. She said she viewed the recording and stated that due to the angle and her position, the recording only showed her feet. She stopped the recording and deleted it.

S.M. noted that after she swam, she went back into the bathroom to change and discovered a cell phone in the toothpaste holder. She noted that the phone's camera was facing her, and the camera was recording at the time. She stopped the recording, viewed it, and deleted it. She stated that the recording captured her undressing, as she changed from her bathing suit to other clothing. This was the third and final recording and/or attempted recording incident that S.M. testified about. S.M. noted that she was eleven when the incidents occurred.

B.P., who was eighteen years old at the time of the trial, testified that when she was fourteen or fifteen years old, she and other children and/or family members went swimming at the home of the defendant, who was dating her

10

godmother at the time. B.P. stated the defendant touched her "private areas" when she went into the shed to get some toys. She further testified that as she tried to move away, the defendant "kept trying to bring me back, rubbing against his body as well." B.P. also stated the defendant touched her "vagina part" while swimming, would expose his private parts to her, and would lick his lips in a way that made her feel like he was "trying to sexually say something" to her. She noted the defendant once pushed her against a bed when she was at her godmother's house getting dressed after a day of swimming. She stated he "put more weight" onto her as she tried to push him away, but she finally escaped.

Finally, another state witness, V.G., was twenty-one years old at the time of the trial. V.G's mother testified that when V.G. was about nine or ten years old, their neighbors, the Gregorios, would babysit V.G. while she worked the night shift at a hospital. At the time, the defendant was a family friend of the Gregorios. V.G. testified that during an overnight stay at the Gregorios' residence, the defendant came in the living room, laid on the air mattress that she was sleeping on, got under the covers, removed her pajama bottoms, and "raped" her. She said she tried to pull away, but the defendant pulled her toward him and told her to be quiet when she told him it hurt and to stop. She specified that her "vagina" was hurting, and she stated that the defendant used his "penis." The defendant stopped when another child in the room at the time got up to go to the bathroom. While V.G. did not allege any other physical contact, she stated the defendant would make "sexual gestures with his mouth," which she described as instances when the defendant would open his mouth and "flick his tongue up and down" when no one else was looking.

As noted above, the trial court was not required to hold a hearing prior to trial regarding the admissibility of the other crimes evidence at issue. Furthermore, in this case, the parties agreed to submit their motions without additional argument.

Finally, it was the State's burden at trial to prove the other acts by a preponderance of the evidence, not beyond a reasonable doubt. Based on our review of the testimony at issue, we find no abuse of discretion in the trial court's ruling that the testimony was admissible. The evidence, which involved sexually assaultive behavior and other inappropriate acts against children under the age of seventeen, was admissible under Article 412.2 to show the defendant's lustful disposition toward young children. We find that the probative value of the evidence was not outweighed by the danger of unfair prejudice under La. C.E. art. 403. Thus, we find no merit in pro se assignment of error number two.

## COUNSELED ASSIGNMENTS OF ERROR

In a combined argument for the counseled assignments of error, the defendant notes that he was sentenced to maximum concurrent sentences for the instant offenses and argues that the trial court failed to consider mitigating factors such as his lack of a violent criminal history or recent criminal activity. He contends that in light of the mitigating factors, the trial court abused its discretion in imposing a constitutionally excessive sentence. The defendant notes that the non-violent offenses included in his criminal history were committed when he was a young person in his twenties. The defendant further states that while the trial court emphasized the nature of the offenses, the court failed to consider the nature of the offender and specifically whether he was the worst type of offender to justify maximum sentences. Finally, the defendant notes that as he is forty-five years old, the ninety-nine-year sentence is essentially a life sentence as applied to him.

The State, in its appellee brief, notes that the trial court considered numerous aggravating factors, including the defendant's use of his position or status to facilitate the commission of the offenses, his knowledge that the victims were particularly vulnerable, and that his conduct involved multiple victims and

incidents for which separate sentences have not been imposed. The State also notes that the defendant failed to mention his 2016 conviction for the violation of a protective order when reciting his criminal history. The State argues that the nature of the defendant's fairly recent 2016 conviction reveals his inability to abide by the law even when subject to a court order. The State further contends that the defendant failed to acknowledge the trial court's determination that he is the "worst of the worst." The State concludes that the trial court properly found that the aggravating factors outweighed any mitigating factors in imposing maximum sentence(s).

The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So. 2d 762, 767 (La. 1979); State v. Honea, 18-0018, p. 3 (La. App. 1st Cir. 12/21/18), 268 So. 3d 1117, 1120, writ not considered, 19-00598 (La. 8/12/19), 279 So. 3d 915. A sentence is constitutionally excessive if it is grossly disproportionate to the severity of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hurst, 99-2868, p. 10 (La. App. 1st Cir. 10/3/00), 797 So. 2d 75, 83, writ denied, 00-3053 (La. 10/5/01), 798 So. 2d 962.

A trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Collins, 09-1617, pp. 5-6 (La. App. 1st Cir. 2/12/10), 35 So. 3d 1103, 1108, writ denied, 10-0606 (La. 10/8/10), 46 So. 3d 1265. Thus, on appellate review of a sentence, the relevant

13

question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. Smith, 01-2574, pp. 6-7 (La. 1/14/03), 839 So. 2d 1, 4; State v. Spikes, 17-0087, p. 4 (La. App. 1st Cir. 9/15/17), 228 So. 3d 201, 205.

Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the district court to consider when imposing sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect that the district court adequately considered the criteria. In light of the criteria expressed by article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Brown, 02-2231, p. 4 (La. App. 1st Cir. 5/9/03), 849 So. 2d 566, 569. Remand is unnecessary when a sufficient factual basis for the sentence is shown. State v. Lanclos, 419 So. 2d 475, 478 (La. 1982); State v. Graham, 02-1492, p. 10 (La. App. 1st Cir. 2/14/03), 845 So. 2d 416, 422.

This court has stated that maximum sentences permitted under statute may be imposed only for the most serious offenses and the worst offenders, or when the offender poses an unusual risk to the public safety due to his past conduct of repeated criminality. State v. Parker, 12-1550, p. 14 (La. App. 1st Cir. 4/26/13), 116 So. 3d 744, 754, writ denied, 13-1200 (La. 11/22/13), 126 So. 3d 478. Further, this court has upheld the imposition of maximum sentences in cases involving repeated sexual abuse where the offender exploited a position of trust. State v. Howard, 10-0285, p. 11 (La. App. 1st Cir 9/10/10), 2010 WL 3527433, at *6; State v. Cole, 19-0033, pp. 19-20 (La. App. 1st Cir. 9/27/19), 288 So. 3d 146, 161-62, writ granted in part, 19-01733 (La. 10/6/20), 302 So. 3d 524; see also State v. Kirsch, 02-0993, pp. 8-10 (La. App. 1st Cir. 12/20/02), 836 So. 2d 390, 395-96, writ denied, 03-0238 (La. 9/5/03), 852 So. 2d 1024.

14

At the sentencing hearing, an impact statement prepared by the victim was read to the trial court. The victim noted that the defendant changed her view of men, "mentally destroyed" her, and made her feel terrible in a way that she would never forget. Consistent with testimony presented at the trial, she noted that she engaged in self harm, such as cutting herself, after the defendant's actions. L.P.'s mother also provided a written statement detailing L.P.'s emotional suffering. In asking the court to impose the maximum penalty without parole, she stated that L.P. "has to live with the scars of the past for the rest of her life." She further stated that she prays the defendant "never gets to see another child for the rest of his [life]." In addition to other victim impact statements that were read to the trial court, the defendant also made a statement, denying the allegations, as he did at trial.

Prior to imposing the sentences, the trial court noted that it heard all of the compelling testimony presented at trial. The trial court further noted that the damage caused by the defendant's offenses was likely to impact the victims for the remainder of their lives. In terms of aggravating factors, the trial court noted the factors listed in the State's brief: (1) that the offender knew or should have known that the victims were particularly vulnerable due to extreme youth; (2) that the defendant used his position or status to facilitate the commission of the offenses; (3) that the offense(s) resulted in significant, permanent injury to the victim and their families; and (4) that the offense(s) involved multiple victims or incidents for which separate sentences have not been imposed.

Whoever commits the crime of molestation of a juvenile when the victim is under the age of thirteen years shall be imprisoned at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of probation, parole, or suspension of sentence. La. R.S. 14:81.2(E)(1) (prior to renumbering by 2011 La.

15

Acts, No. 67, § 1). Whoever commits the crime of sexual battery on a victim under the age of thirteen years when the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence. La. R.S. 14:43.1(C)(2). Herein, the trial court imposed the maximum term of imprisonment allowed by statute on each count of ninety-nine years imprisonment at hard labor, with twenty-five years to be served without benefits, to run concurrently. The trial court then stated, "I find that this offender truly is, as the legislature has set out for maximum sentences, the worst of the worst."

Initially, we note that while the trial court imposed the maximum term of imprisonment, it could have also imposed the entire sentence on each count without benefits, but instead limited the restriction on benefits to the statutory minimum. We find that the trial court gave well-thought-out reasons and justifications for its sentencing. We further note that a thorough review of the record reveals that the trial court adequately considered the criteria of Article 894.1 in imposing the sentences herein. Testimony presented at trial and at the sentencing hearing showed that the victim was suicidal and emotionally damaged by the offenses committed in this case. The defendant continued to exploit his position of trust and engaged in repeated sexual abuse of the victim. As noted by the trial court, there is a potential for long-term mental and psychological effects on the victim. We further note that the defendant was accused of inappropriate acts involving more than one minor victim, causing each victim to endure emotional suffering. We note that the defendant's statement at sentencing showed no remorse or sympathy for the victim in this case or the other minor victims.

The record before us clearly establishes an adequate factual basis for the sentences imposed. Therefore, we find no error in the trial court's denial of the

motion to reconsider sentence or abuse of discretion in imposing maximum sentences in this case. In accordance with the above, counseled assignments of error numbers one and two lack merit.

**CONVICTIONS AND SENTENCES AFFIRMED.**