958 So.2d 1160 (2007)
STATE of Louisiana
v.
Ricky Joseph LANGLEY.
No. 06-KK-1041.
Supreme Court of Louisiana.
May 22, 2007.
*1161 Clive A. Stafford Smith, Phyllis E Mann, Alexandria, Christine M. Lehmann, for Applicant.
Charles C. Foti, Jr., Attorney General, John F. DeRosier, District Attorney, Carla S. Sigler, Cynthia S. Killingsworth, Sharon D. Wilson, Frederick W. Frey, Assistant District Attorneys, for Respondent.
Ellis Paul Adams, Jr., for Louisiana District Attorneys Association, Amicus Curiae.
Robert Stephen Glass and G. Benjamin Cohen, for Louisiana Association of Criminal Defense Lawyers, Amicus Curiae.
John Howard Holdridge and Katherine Schwartzmann, for American Civil Liberties Union, Amicus Curiae.
JOHNSON, Justice.
We granted certiorari in this capital murder case to determine whether the defendant, Ricky Joseph Langley, who was charged with first-degree murder, but was found guilty of the lesser-included offense of second degree murder, may be retried for first degree murder following reversal of his conviction.

PROCEDURAL HISTORY
Langley was indicted by a grand jury for first degree murder, in violation of LSA-14:30. He was convicted in 1994 of *1162 first degree murder and sentenced to death. On appeal, this Court affirmed his conviction and sentence, but on application for rehearing, remanded the case to the trial court for evidentiary proceedings concerning the validity of the grand jury indictment and Langley's claim of intentional discrimination in the selection of grand jury foreperson. State v. Langley, XXXX-XXXX (La.4/14/98), 711 So.2d 651, reh'g granted in part (La.6/19/98). On remand, the trial court granted Langley's motion to quash the indictment and vacated his conviction and sentence. This Court upheld that judgment on appeal by the state. State v. Langley, XXXX-XXXX (La.4/3/02), 813 So.2d 356 ("Langley I").
Langley was re-indicted on a charge of first degree murder, to which he pleaded not guilty and not guilty by reason of insanity. Due to overwhelming pretrial publicity, the jury was selected from Orleans Parish, but the case was tried in Calcasieu Parish, where the sequestered jury was housed for the duration of the trial proceedings. After trial by jury, the jury rejected Langley's insanity defense and convicted him of the lesser included offense of second degree murder, a violation of LSA-14:30.1. Langley was then given the mandatory sentence of life imprisonment at hard labor.
On appeal, Langley argued, inter alia, that the temporary absences of the trial judge from the courtroom during portions of the voir dire examination of prospective jurors, and during closing arguments of counsel, constituted a structural defect in the proceedings, exempt from harmless-error analysis, which required reversal of his conviction and sentence. The court of appeal agreed that "the errors committed by the trial judge, in absenting himself from the proceedings and failing to maintain decorum, were structural errors requiring reversal of the Defendant's conviction without a showing of actual prejudice." State v. Langley, XXXX-XXXX, p. 15 (La.App. 3 Cir. 12/29/04), 896 So.2d 200, 210 ("Langley II").
In Langley II, a majority of the panel further concluded that the structural defects not only constituted reversible error, but also rendered the jury's verdict absolutely void, resulting in neither a conviction for second degree murder, nor an acquittal of first degree murder. The appellate opinion held that the state could exercise its plenary discretion over the subsequent conduct of the prosecution pursuant to LSA-C.Cr.P. art. 61, and could retry relator for capital murder, thereby exposing the Defendant once again to the prospect of the death penalty. Langley, XXXX-XXXX at 18-19, 896 So.2d at 211-12 ("[T]he verdict resulting from structural error [is] a nullity. . . . The necessary consequence of such a verdict is retrial, as though no verdict had been reached.").
Chief Judge Thibodeaux dissented from that portion of the majority opinion, considering the remarks about the nullity of the verdict both advisory and ill-advised, given that Langley had asked the court of appeal to review only his conviction of second degree murder for error, and not his acquittal of first degree murder. Langley, XXXX-XXXX at 1-2, 896 So.2d at 212-13 (Thibodeaux, C.J., dissenting in part and concurring in part) ("We must remember that it is the defendant who appealed. None of the fifteen assignments of error asserted by the defendant deal with the effect of an absolutely null verdict. . . . [T]he majority's opinion clearly states that: `[t]he question to be resolved is whether the trial judge's conduct constitutes trial error, which is subject to review for harmless error, or structural error, which defines analysis by harmless error standards.' . . . Nothing more and nothing less.").
*1163 After the state re-indicted Langley for first degree murder, he moved to quash the indictment. The trial court granted the motion, limiting the state to retrial of the defendant for second degree murder only. The court considered that retrial for first degree murder would violate Langley's protections against double jeopardy and penalize him for his success on appeal by forcing him to endure another capital prosecution.
The state sought review. The court of appeal granted the state's writ, holding that its earlier pronouncements in Langley II regarding the absolute nullity of the defendant's prior conviction were not dicta, but were binding on the lower court as the "law of the case." State v. Langley, XXXX-XXXX (La.App. 3 Cir. 4/5/06), 925 So.2d 778 (Table) ("Langley III"). This court granted Langley's writ to review the correctness of that decision.[1]

LAW AND ANALYSIS
The defendant contends that the court of appeal's ruling violated the federal and state constitutional prohibitions against double jeopardy by allowing the state to proceed with a charge of first degree murder on retrial when the defendant has previously been acquitted of first degree murder. The defendant also contends that the court of appeal violated the right to appeal found in the Louisiana Constitution.
The state contends that the prohibitions against double jeopardy found in the federal and state constitutions do not prohibit retrial of Langley on a charge of first degree murder. The state argues that, because the defendant's conviction of the lesser-included offense of second degree murder was set aside on the basis of a structural defect in Langley II, that trial was rendered void ab initio. The state asserts that the void trial is akin to one which is "illegally constituted" pursuant to La.C.Cr.P. art. 595, and that Langley cannot be considered as having been previously placed in jeopardy such that double jeopardy principles are violated by his re-indictment on charges of first degree murder.

Law of the Case Doctrine
Although neither the state nor the defendant sought review of the court of appeal's judgment in Langley II, this court is not prevented from reviewing the court of appeal's prior reasoning, particularly when that reasoning results in subsequent consequences now before the court. In Langley II, the court of appeal found that structural error occurred in Langley's trial, which error was not subject to an analysis for harmless error and which rendered his trial absolutely null. Although the appellate court found itself unable to revisit that reasoning in Langley III under the doctrine of "law of the case," this court is not similarly constrained. The law of the case principle "is not applied to prevent a higher court from considering the correctness of a ruling by an intermediate appellate court." Levine v. First Nat. Bank of Commerce, XXXX-XXXX p. 3, n. 4 (La.12/15/06), 948 So.2d 1051; Pumphrey v. City of New Orleans, XXXX-XXXX p. 7 (La.4/4/06), 925 So.2d 1202, 1207. Although this issue usually arises after this court has denied supervisory writs, and the case returns, there is no reason that the same principles of law would not be equally applicable in this case. As stated by Justice Tate in Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105, 107 (La.1972), most recently cited in Pumphrey, supra:
. . . the law-of-the-case principle is applied merely as a discretionary guide: Argument is barred where there is *1164 merely doubt as to the correctness of the former ruling, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice. Further, the law-of-the-case principle is not applied so as to prevent a higher court from examining the correctness of the ruling of the previous court.
Although the fact of the reversal of Langley's conviction for second degree murder is not before the court, the court of appeal's reasoning which resulted in the reversal and remand must be reviewed in light of the double jeopardy implications of that trial.
We turn now to a review of the court of appeal's reasoning which invalidated Langley's conviction of second degree murder.
Analysis of Court of Appeal's Reasoning
The principal question raised by Langley on the direct appeal of his conviction for second degree murder was whether the error he asserted, the absence of the trial judge from portions of his trial, rose to a level which would require reversal of his conviction.
In Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the Supreme Court distinguished between structural defects in a criminal trial and all other errors committed during the course of the proceedings. The Court thereby sought to clarify when harmless-error analysis is appropriately conducted by an appellate court (for trial error) and when it is not (structural defect). As to the latter class of error, "structural defects in the constitution of the trial mechanism . . . defy analysis by `harmless-error' standards . . . [because they] affect the framework within which the trial proceeds, rather than simply [interject] an error in the trial process itself." Fulminante, 499 U.S. at 310, 111 S.Ct. at 1265; see also Brecht v. Abrahamson, 507 U.S. 619, 629-30, 113 S.Ct. 1710, 1717, 125 L.Ed.2d 353 (1993)("The existence of such [structural] defects . . . requires automatic reversal of the conviction because they infect the entire trial process.").
Structural defects occur in only "a very limited class of cases," and include the total deprivation of the right to counsel, lack of an impartial trial judge, unlawful exclusion of grand jurors of the defendant's race, deprivation of the right to self-representation at trial, the right to a public trial, and erroneous reasonable doubt instructions. Johnson v. United States, 520 U.S. 461, 468-69, 117 S.Ct. 1544, 1549-50, 137 L.Ed.2d 718 (1997); Neder v. United States, 527 U.S. 1, 7-8, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999); United States v. Stevens, 223 F.3d 239, 244 (3rd Cir. 2000); see also State v. Ruiz, XXXX-XXXX p. 6 (La.4/11/07), 955 So.2d. 81.
In Langley II, the court of appeal found that the trial judge's absences from the bench and his failure to maintain courtroom decorum were structural defects or errors requiring reversal of the defendant's second degree murder conviction without the necessity of Langley showing that he was actually prejudiced. Langley, 2004-269 p. 15, 896 So.2d at 210. However, our review of the court of appeal's reasoning, and the federal cases upon which it relied, show interpretive errors on the part of the court of appeal in its characterization of the trial judge's absence as a structural defect.
Gomez v. United States
The court of appeal cited to Gomez v. United States, 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) as authority for finding that the trial judge's absence during voir dire was an error that "impinge[d] on the foundation of the trial, i.e. jury selection, and affect[ed] the framework on which the entire proceedings *1165 [were] built." Langley, 2004-269 p. 13, 896 So.2d at 208.
In Gomez, the Supreme Court answered in the negative the question whether a federal magistrate presiding at the selection of a jury in a felony trial without the defendant's consent was among the "additional duties" that district courts could assign to magistrates under the Federal Magistrates Act. The Supreme Court harbored "serious doubt" that a district judge could review a magistrate's determinations on voir dire, acknowledging that a court must scrutinize not only the words spoken by prospective jurors but also their gestures and attitudes. Gomez, 490 U.S. at 874-875, 109 S.Ct. at 2247-2248.
The Gomez court found that specific prejudice need not be shown in a situation where a magistrate, and not a district judge, conducted the voir dire. The Supreme Court found that "among the basic fair trial rights that can never be treated as harmless is a defendant's right to an impartial adjudicator, be it judge or jury." Gomez, 490 U.S. at 876, 109 S.Ct. at 2248 (internal citations omitted). The Supreme Court went on to conclude, applicable to the case before it, that "[e]qually basic is a defendant's right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside. Thus harmless-error analysis does not apply in a felony case in which, despite the defendant's objection and without any meaningful review by a district judge, an officer exceeds his jurisdiction by selecting a jury." Id. (Emphasis added).
Far from standing for the proposition that a harmless-error analysis does not apply to a situation where a judge is absent for a part or all of voir dire, and that this is a structural error, Gomez stands for the proposition that a critical part of trial may not be conducted by a person without jurisdiction to preside. A conviction obtained in a court of improper jurisdiction is, without doubt, a null conviction. For example, if a capital trial was held in a mayor's court, any resulting conviction would be absolutely null and void because the mayor's court, and the mayor presiding, do not have jurisdiction over the matter.
The main holding in Gomez is inapplicable in this case, where trial was conducted by a judicial officer with proper jurisdiction. The fact that the trial judge was not present for a portion of the trial is a trial error which should have been reviewed to determine whether the error was harmless beyond a reasonable doubt.[2]
U.S. v. Mortimer
With regard to the trial judge's absence during closing arguments, the court of appeal relied on U.S. v. Mortimer, 161 F.3d 240 (3rd Cir.1998) to find that structural error occurred. Yet an examination of Mortimer shows that it cannot be relied on in this context, either. In Mortimer, the judge, who had been present during the prosecutor's summation, was absent from the defense's closing argument. The judge's absence was noted when the prosecutor made an objection, only to withdraw it with the exclamation, "The judge is not here." Id., 161 F.3d at 241. The judge gave no notice to counsel or the jury of his absence. He was back on the bench in time to thank defense counsel for her speech, and to call on the prosecutor for rebuttal.
The federal appellate court found that, under the facts presented, structural error *1166 occurred during trial. This definitive statement is footnoted, however, to note that one of the three judges deciding the case, Chief Judge Becker, believed that the preferable manner of deciding the case was under the harmless error standard. Although Chief Judge Becker was satisfied that the patent error involved here was clearly not harmless beyond a reasonable doubt, he believed that under the facts of this case, the label "structural" was not inappropriate. Mortimer, 161 F.3d at 241 fn. 1.
The federal appellate court then cited Gomez, with the same language relied upon by the court of appeal in this case:
A trial consists of a contest between litigants before a judge. When the judge is absent at a "critical stage" the forum is destroyed. Gomez v. United States, 490 U.S. 858, 873, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). There is no trial. The structure has been removed. There is no way of repairing it. The framework "within which the trial proceeds" has been eliminated. See Arizona v. Fulminante, 499 U.S. 279, 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The verdict is a nullity. Gomez, 490 U.S. at 876, 109 S.Ct. 2237 (1989). Mortimer, 161 F.3d at 241.
From the facts of Gomez, discussed supra, we know that when the Supreme Court states that a trial is a contest between litigants before a judge, this means before a judge and not a magistrate. When a person other than a person with jurisdiction presides at a critical stage of trial, "the forum is destroyed," "there is no trial," and "the structure has been removed." Gomez was speaking to jurisdictional deficiencies.
That the Mortimer court did not believe that a true structural error occurred can be seen in its subsequent language. The federal appellate court continued: "We cannot, of course, anticipate every circumstance under which the judge's absence may destroy the structure." Mortimer, 161 F.3d at 241. In other words, the federal court was conceding that there are circumstances in which a trial judge's absence from the bench may be harmless. This is not the type of error, impacting the trial from beginning to end, that was contemplated as a "structural error" by the Supreme Court. Although Mortimer considers other cases where a judge's absence was consented to by the parties and another where a trial judge's absence was extremely brief, the federal appellate court held that prejudice did not need to be shown.
It is beyond doubt that the federal appellate panel believed the error committed in that case to have been very serious. But the same result, i.e. reversal of the conviction and remand for a new trial, could have been achieved by finding the trial error to not be harmless beyond a reasonable doubt under a harmless error analysis. However, the federal appellate panel did acknowledge that the error there was not recognized by the Supreme Court as a structural error. The federal appellate court's use of the term "structural" to describe the error, as noted in the footnote, and their reliance on the inapposite Gomez, serves instead to emphasize the court's extreme disapproval of the trial judge's conduct.
Riley v. Deeds
Finally, the court of appeal relied upon Riley v. Deeds, 56 F.3d 1117 (9th Cir. 1995). In Riley, the trial judge could not be located when, during jury deliberations, the jury requested that the victim's testimony be read back to them. In the trial judge's absence, court was conducted by his law clerk. The law clerk informed the jury that the victim's testimony would be read to them and that the foreman should *1167 indicate at which point the jury had heard enough. After the victim's direct examination was read, the jury foreman indicated the jury had heard enough. The Riley court found the trial judge's absence to be an error of constitutional magnitude.[3]
The federal appellate court found that the presence of a judge is at the "very core" of the constitutional guarantee of trial by an impartial jury and was a proposition "so generally admitted, and so seldom contested, that there has been little occasion for its distinct assertion." Riley, 56 F.3d at 1119 (citing Capital Traction Co. v. Hof, 174 U.S. 1, 13-14, 19 S.Ct. 580, 585-586, 43 L.Ed. 873 (1898)[4]). Once again, the only uncontested proposition in this context is that a person having jurisdiction to preside over a trial must do so, and not a person without jurisdiction. In Riley, the law clerk presided over part of the trial by making evidentiary rulings in the absence of the trial judge. Thus, a jurisdictional defect occurred which required reversal.
We find that, just as with Gomez, the court of appeal again relied improperly upon a case concerning jurisdictional defects to support its erroneous conclusion that a structural error occurred.
Structural Defect or Trial Error
As previously mentioned, the Supreme Court has recognized structural error in a very limited class of cases. These include (1) the total deprivation of the right to counsel, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); (2) a biased trial judge, Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); (3) unlawful exclusion of grand jurors of defendant's race, Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); (4) denial of self-representation at trial, McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); (5) denial of a public trial; Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); and (6) a defective reasonable doubt instruction, Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). See Ruiz, XXXX-XXXX, 955 So.2d at 85-86.
Other than in these six restricted classes of cases, the Supreme Court has failed to find structural error in the wide range of errors presented to it. When the Supreme Court speaks of a structural defect, it means that "the entire conduct of the trial from beginning to end is obviously affected by the [error]." Fulminante, 499 U.S. at 309-110, 111 S.Ct at 1265. The two examples used in Fulminante to illustrate this point were the total deprivation of the right to counsel, for which a defendant would be affected by the absence of counsel from the beginning to the end of the trial, or a biased trial judge, who would be presiding over the entire trial. From these examples, it is clear that when the Supreme Court speaks of structural error, the Court is referring to something which affects the entire framework of the trial *1168 and not something which may have differing degrees of impact, depending on other trial factors.
The court of appeal in this matter, however, concluded that:
"the determination of whether an error or combination of errors is structural defies a strict formulaic evaluation. Rather, the determination will turn on a case by case analysis of the egregiousness of the complained of conduct, the constitutional ramifications of the error, and the degree of damage caused to the framework of the proceedings. It may be that a single error is of sufficient gravity to destroy the forum and thus constitute structural error. Likewise, an accumulation of less serious errors, when taken as a whole, may so undermine the framework of the proceedings as to rise to the level of a structural error." Langley, 2004-269 p. 12, 896 So.2d at 209-210.
Clearly, the court of appeal meant something very different from the Supreme Court's interpretation when it described "structural error." The court of appeal was looking to the effect of the error. In doing so, the court of appeal erred. An analysis of the "egregiousness of the conduct" or "degrees of damage" is, in reality, the type of harmless error review that a court would use to analyze a trial error. Conversely, a structural error, by its very nature, impacts the entire framework of the trial from beginning to end, without reference to any other trial consideration.
As explained in Fulminante, most errors which occur are trial errors, even though they may impact a defendant's constitutional rights. However, "constitutional error does not automatically require reversal of a conviction," and indeed, "most constitutional errors can be harmless," or reviewed for harmless error. Id., 499 U.S. at 306, 111 S.Ct. at 1263. The court of appeal's opinion suggests that, in order to reverse the defendant's conviction and sentence, it had to find that a structural error occurred. That is not so, as a trial error which is not harmless beyond a reasonable doubt would likewise result in the reversal of the defendant's conviction and sentence.
The court of appeal found reversible error due to the judge's absence from portions of the trial. But a judge's absence from the bench for a few minutes would not necessarily, in the context of an entire trial, destroy the fundamental framework of the trial from beginning to end. Whether the conduct requires reversal of the conviction and sentence would depend upon what occurred during the judge's absence. Because there are degrees of prejudice that could result from this error to the criminal defendant, this is clearly a trial error, which simply injected an error in the trial process itself, and not a structural error or defect which affected the framework within which the trial proceeded. Trial error occurs during the presentation of the case to the trier of fact and may be quantitatively assessed in the context of the other evidence presented in order to determine whether [the error] was harmless beyond a reasonable doubt. Fulminante, 499 U.S. at 307-308, 111 S.Ct. at 1264; Ruiz, XXXX-XXXX, 955 So.2d at 86.
It is unnecessary for us to make the further determination whether the trial error which occurred in Langley II was harmless beyond a reasonable doubt. Neither the state nor the defendant sought writs from the court of appeal's reversal of Langley's conviction of second degree murder; thus, the correctness of that ruling is not presently at issue. The court of appeal's reasoning with regard to the reversal of Langley's conviction is before us *1169 only insofar as its determination that structural error occurred has implications to our present discussion.
Effect of Reversal Based on Trial Error
Langley contends that the jury verdict finding him guilty of second degree murder acted as an acquittal to the charged crime of first degree murder. Consequently, Langley argues that his re-indictment on first degree murder charges violates the prohibition against double jeopardy. The trial court agreed and quashed the indictment for first degree murder on Langley's motion.
The state contends, and the court of appeal held, that the trial in Langley II was void ab initio. Holding that a structural error is akin to an illegally constituted court under the provisions of La. C.Cr.P. art. 595,[5] the court of appeal reversed the trial court's ruling on the motion to quash, finding that Langley should not be considered as having previously been in jeopardy.
The Fifth Amendment of the U.S. Constitution provides that "no person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." As its principal protection, this prohibition against double jeopardy prohibits the State from prosecuting a defendant twice for the same crime in cases in which the defendant has been acquitted in the first trial. Benton v. Maryland, 395 U.S. 784, 796, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). In Green, the Supreme Court held that when a defendant is convicted of a lesser included offense and that conviction is overturned on appeal, the conviction operates as an implied acquittal of the charged crime, prohibiting the State from retrying the defendant on the original charge. Id., 355 U.S. at 193, 78 S.Ct. at 226-227 (the prohibition against double jeopardy prohibits a defendant from having to "barter his constitutional protection against a second prosecution" for the charged crime "as the price of a successful appeal from an erroneous conviction" on the lesser offense). The Louisiana Constitution contains a similar guarantee in Article 1, § 15.[6]
We have found that the reversible error which occurred in the retrial in Langley II was a trial error and not a structural defect. Consequently, where there was no structural error or jurisdictional defect,[7] there is no basis whatsoever for concluding that the trial in Langley II should be given no effect in a double jeopardy analysis. Although Langley's second degree murder conviction was reversed, the trial in which that conviction was obtained was not an absolute nullity.
All of the structural requirements were present in Langley II for its trial to be given effect for double jeopardy purposes. Once the state instituted prosecution by securing a new grand jury indictment against Langley, the district court acquired subject matter jurisdiction over the *1170 felony proceedings pursuant to La. Const. art. V, § 16, and the court otherwise had personal jurisdiction over Langley. See State v. Jackson, 2004-2863, p. 11 (La.11/29/05), 916 So.2d 1015, 1021 ("Prosecution was properly commenced by valid bill of information that informed the accused of the nature of the charges against him and therefore jurisdiction was proper."). The trial court then convened the correct 12-person jury forum to try the case and properly instructed jurors with regard to unanimity required to return any lawful verdict. La. Const. art. 1, § 17(A); La.C.Cr. P. art. 782(A). The instructions admonished jurors that if they were not convinced beyond a reasonable doubt "that the defendant is guilty of First Degree Murder, but you are convinced beyond a reasonable doubt that the defendant is guilty of second degree murder the form of your verdict should be guilty of Second Degree Murder." Jurors then returned a lawful, unanimous verdict convicting Langley of second degree murder. Second degree murder is a crime under the laws of Louisiana and is a responsive verdict to a charge of first degree murder. LSA-R.S. 14:30.1; La.C.Cr P. art. 841(A). A unanimous verdict of a lesser included offense is a legal verdict in a capital prosecution. La. Const. art. 1, § 17(A); La. C.Cr.P. art. 782(A).
Under these circumstance, and by operation of longstanding double jeopardy law, we hold that the unanimous verdict of guilty of second degree murder returned by Langley's jury in Langley II implicitly acquitted him of first degree murder. The structure of the defendant's trial was not destroyed by the trial judge's error in absenting himself during portions of the trial. Even though the trial error requires a reversal of Langley's conviction and sentence, the verdict rendered by the jury was a legal verdict and should be given effect pursuant to La.C.Cr.P. art. 598(A):
When a person is found guilty of a lesser degree of the offense charged, the verdict or judgment of the court is an acquittal of all greater offenses charged in the indictment and the defendant cannot thereafter be tried for those offenses on a new trial.
Consequently, the state is limited in any subsequent prosecution to re-indicting the defendant on a charge of second degree murder.

CONCLUSION
Accordingly, we find that the court of appeal erred in this matter in reversing the trial court's ruling on the motion to quash. The trial judge's absence during portions of the trial in Langley II is not recognized as one of the extremely limited, restrictively-defined errors regarded as a structural defect by the Supreme Court. Because there were no structural errors or jurisdictional defects in the trial at issue in Langley II, but only trial error, the court of appeal's statements in Langley II and Langley III regarding the effect of an absolutely null verdict are dicta, inaccurate in the context of this case, and improper. The court of appeal's reliance upon this reasoning as "law of the case" was error. The trial court therefore remained free to apply the correct law of the case-that Langley's conviction for second degree murder acquitted him of the charged offense of first degree murder and that the state therefore may not retry him for that capital offense. The state, upon re-indictment of the defendant, is limited to charging the defendant with second degree murder. To the extent that the majority opinion in State v. Langley, XXXX-XXXX (La.App. 3 Cir. 12/29/04), 896 So.2d 200, differs from the views expressed herein, it is expressly disapproved.

*1171 DECREE

Accordingly, the order of the court of appeal is reversed, the judgment of the district court limiting the prosecution of Ricky Joseph Langley to a charge of second degree murder in violation of LSA-R.S. 14:30.1 is reinstated, and this case is remanded for further proceedings consistent with the views expressed herein.
REVERSED, JUDGMENT OF TRIAL COURT REINSTATED AND REMANDED.
KNOLL, J., dissents and assigns reasons.
KNOLL, Justice, dissenting.
I disagree with the majority's resolution of this res nova double jeopardy issue. It defies logic that the absence of the trial judge from critical stages of the prosecution results in the rendition of no legal verdict, either of conviction or of acquittal, and yet the defendant can use the jury's verdict of second-degree murder to bootstrap a plea of double jeopardy, and thus deny the State the opportunity to retry him for first-degree murder, the originally charged offense. No one is entitled to an illegally constituted trial that renders the conviction and sentence a nullity; nor is anyone entitled to claim the benefits from a trial that is considered not to be a trial, i.e., a nullity. My review of the law and jurisprudence convinces me defendant's plea of double jeopardy is without merit.
LA.CRIM.CODE ANN. art. 595 specifically provides that "[a] person shall not be considered as having been in jeopardy in a trial in which . . . [t]he court was illegally constituted or lacked jurisdiction;. . . ." The phrase "was illegally constituted" encompasses a number of defects or irregularities not waived by defendant's failure to object. LA.CRIM.CODE ANN. art. 595, Comment (c). In that light, this Court stated in State v. Kent, 262 La. 695, 264 So.2d 611, 614 (1972), "Article 595 is meant to be illustrative of non-jeopardy proceedings in trials, setting out examples of frequent bases for dismissal of a prior proceeding where the defendant has not been placed in `danger.'" The basis for the requirement that, in order to support a plea of former jeopardy, the previous proceeding must be validly based is that the previous conviction might be upset at any time. See State v. Williams, 301 So.2d 587, 588 (La.1974).
In the present case, I find the trial judge's absence during voir dire and closing arguments the equivalent of a "court [that] was illegally constituted." When the judge is absent at a critical stage, the forum is destroyed. Gomez v. United States, 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989); United States v. Mortimer, 161 F.3d 240 (3 Cir.1998). As the court held in Mortimer, when the trial judge absents himself/herself during the trial, "[t]here is no trial." Moreover, "[t]he verdict is a nullity." Id. at 241, citing Gomez, 490 U.S. at 876, 109 S.Ct. 2237. In my view, the verdict was a nullity in the case sub judice; thus, I find it clear under the provisions of LA.CRIM.CODE ANN. art. 595 that the defendant's interjection of a plea of double jeopardy is neither supported nor sustainable. Obviously, the defendant was not placed in jeopardy on his second trial because of the nullity of the verdict that the trial judge's absence precipitated.
I further find no infringement of defendant's constitutional right to appeal if the State is allowed to retry him for first-degree murder. "[T]he chilling [effect on] appeals does not in and of itself offend due process." United States v. Henry, 709 F.2d 298, 316 n. 26 (5 Cir.1983). As this Court stated in State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, "[D]ue process *1172 is not offended by all possibilities of increased punishment after appeal, only those which involve `actual retaliatory motivation' or `pose a realistic likelihood of vindictiveness.'" Williams, 800 So.2d at 798-799, quoting Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). The defendant exercised his appellate right, called the court's attention to the egregious nature of the trial court's conduct in his second trial, and obtained the relief he sought-the reversal of the jury verdict. In the present case, the State now seeks nothing that it did not already pursue.
For these reasons, I respectfully dissent.
NOTES
[1] State v. Langley, XXXX-XXXX (La.9/15/06), 936 So.2d 1251.
[2] It is unnecessary for us to determine whether the trial error was harmless beyond a reasonable doubt, as the fact of the reversal of the defendant's conviction is not now before this court.
[3] As previously stated, "all constitutional errors are not structural and indeed, most are amendable to harmless error analysis." State v. Jones, 2005-226 p. 4 (La.2/22/06), 922 So.2d 508, 511.
[4] In Capital Traction Co., relied upon by Riley, the question was whether, in the District of Columbia, a justice of the peace could preside over a jury trial for a civil action to recover damages in the amount of $300 and whether that would constitute a "trial by jury." The Supreme Court held that a trial by a jury of twelve persons before a justice of the peace was not a trial by jury within the meaning of the common law and of the seventh amendment to the constitution. Consequently, a trial of facts by a jury before the justice of the peace would not prevent those facts from being reexamined de novo by a jury in the appellate court. Id., 174 U.S. at 45-46, 19 S.Ct. at 597.
[5] La.C.Cr.P. art. 595 provides, in pertinent part, "[a] person shall not be considered as having been in jeopardy in a trial in which: (1) The court was illegally constituted or lacked jurisdiction; . . . ".
[6] La. Const. art. 1, § 15 provides in pertinent part: ". . . No person shall be twice placed in jeopardy for the same offense, except on his application for a new trial, when a mistrial is declared, or when a motion in arrest of judgment is sustained."
[7] We do not subscribe to the appellate court's broad view that structural errors or defects necessarily constitute the functional equivalent of jurisdictional defects which render the proceedings not merely voidable but absolutely null.