NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 KA 0295

STATE OF LOUISIANA

VERSUS

RONALD D. CAMPBELL

*Judgment Rendered:* NOV 0 3 2023

* * * * * * * *

Appealed from the
18th Judicial District Court
In and for the Parish of West Baton Rouge
State of Louisiana
Case No. 212849, Division B

The Honorable Tonya S. Lurry, Judge Presiding

* * * * * * * *

Holli Herrle-Castillo
Marrero, Louisiana

Counsel for Defendant/Appellant
Ronald D. Campbell

Antonio M. "Tony" Clayton
District Attorney
Terri Russo Lacy
Assistant District Attorney
Port Allen, Louisiana

Counsel for Appellee
State of Louisiana

* * * * * * * *

BEFORE: THERIOT, PENZATO, AND GREENE, JJ.

**THERIOT, J.**

The defendant, Ronald D. Campbell, was charged by grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1, and he pled not guilty.[1] After a jury trial, the defendant was found guilty as charged. The trial court denied a motion for new trial filed by the defendant and sentenced the defendant to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. The defendant now appeals, assigning error to the dismissal of a prospective juror, the denial of a motion for continuance, the sufficiency of the evidence, and the legality of the sentence. For the following reasons, we affirm the conviction, amend and affirm the sentence as amended, and remand with instructions.

## STATEMENT OF FACTS

On September 18, 2021, witnesses saw the defendant shoot Trey Allen during a fight in the parking lot of Raxx Bar and Grill in Port Allen after the bar had closed. Earlier that night, Tristan Leblanc, a bar patron, was confronted by the members of a rap group that performed at Raxx that night, including the defendant. When the bar closed, Antonio Johnson, another member of the defendant's rap group, called Leblanc's name and lured him to the parking lot, where he was "jumped" by a group of individuals, including the defendant. Allen then came to Leblanc's rescue, allowing Leblanc to escape, as the group turned their attention to Allen. During the altercation, the defendant pulled out a black handgun and shot Allen in the chest. An autopsy performed the next day showed Allen died from the single gunshot wound.

---
[1] The instant case involves a retrial, as the initial trial of this matter was declared a mistrial.

2

## SUFFICIENCY OF THE EVIDENCE[2]

In assignment of error number three, the defendant argues the evidence was insufficient to support the conviction of second degree murder. The defendant claims witnesses saw Allen strike and attempt to body slam the defendant before the defendant shot him. Thus, he argues Allen's actions constituted provocation sufficient to deny an average person of self-control and cool reflection, and the offense should have been reduced to manslaughter in this case.

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV, La. Const. art. I, § 2. The standard of review for sufficiency of the evidence to support a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See La. Code Crim. P. art. 821(B); **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); **State v. Ordodi**, 2006-0207, p. 10 (La. 11/29/06), 946 So.2d 654, 660; **State v. Mellion**, 2021-1116, p. 3 (La.App. 1 Cir. 4/8/22), 342 So.3d 41, 45, writ denied, 2022-00732 (La. 6/22/22), 339 So.3d 1186, cert. denied, ___ U.S. ___, 143 S.Ct. 319, 214 L.Ed.2d 141 (2022).

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably

---

[2] When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first assess the sufficiency of the evidence. See **State v. Hearold**, 603 So.2d 731, 734 (La. 1992). When the entirety of the evidence is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion of trial error issues as to that crime would be pure dicta since those issues are moot. However, when the entirety of the evidence is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the other assignments of error to determine whether the accused is entitled to a new trial. **State v. Germany**, 2021-1614, p. 4 (La.App. 1 Cir. 9/26/22), 353 So.3d 804, 809, writ denied, 2022-01568 (La. 1/11/23), 352 So.3d 983. Accordingly, we will first address the issue of the sufficiency of the evidence.

3

inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. **State v. Currie**, 2020-0467, p. 6 (La.App. 1 Cir. 2/22/21), 321 So.3d 978, 982. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. **State v. Southall**, 2022-0746, p. 6 (La.App. 1 Cir. 6/2/23), ___ So.3d ___, ___, 2023 WL 3862595, *3.

Second degree murder is defined, in pertinent part, as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific intent is that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Because it is a state of mind, specific intent need not be proven as a fact, but may be inferred from circumstances surrounding the offense and the defendant's actions. Specific intent to kill can be formed in an instant and may be inferred from a defendant's act of pointing a gun and firing at a person. **State v. Livous**, 2018-0016, p. 4 (La.App. 1 Cir. 9/24/18), 259 So.3d 1036, 1040, writ denied, 2018-1788 (La. 4/15/19), 267 So.3d 1130; **State in Interest of T.C.**, 2018-1246, p. 4 (La.App. 1 Cir. 12/21/18), 269 So.3d 716, 719.

Manslaughter is defined, in pertinent part, as a homicide that would either be first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31(A)(1). The elements of sudden passion and heat of blood are mitigatory factors in the nature of a

4

defense, and when such factors are established by a preponderance of the evidence, a verdict for murder is inappropriate. The State does not bear the burden of proving the absence of these mitigatory factors; it is the defendant's burden to establish by a preponderance of the evidence the mitigating factors of sudden passion or heat of blood to reduce a homicide to manslaughter. See **State v. LeBoeuf**, 2006-0153, p. 5 (La.App. 1 Cir. 9/15/06), 943 So.2d 1134, 1138, writ denied, 2006-2621 (La. 8/15/07), 961 So.2d 1158.

Provocation and time for cooling are questions for the jury to be determined under the standard of the average or ordinary person who possesses ordinary self-control. If a man unreasonably permits his impulse and passion to obscure his judgment, he will be fully responsible for the consequences of his act. **State v. Leger**, 2005-0011, p. 92-93 (La. 7/10/06), 936 So.2d 108, 170-71, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007) (citing Reporter's Comment to La. R.S. 14:31).

At trial, the State presented witnesses, cell phone videos, and surveillance footage to show that the defendant, who appeared to be unarmed while performing on stage, armed himself at some point prior to the parking lot fight, and shot Allen during the fight without adequate provocation. Dylan Ainsworth, the disc jockey at the bar who allowed the defendant and his group to perform that night, testified that he did not see a gun on the defendant while he was performing with the other members of the rap group. Video footage of the performance shows the defendant and other members of the rap group jumping and dancing while performing. Consistent with Ainsworth's testimony, the defendant did not have a visible weapon on him during the performance.

Tristan Leblanc testified that earlier that night, the defendant and the other rappers became confrontational after he briefly danced with a girl. He testified that after the girl "danced on [him]" five or six of the rappers, including the defendant,

5

started jumping at him and acting as though they wanted to fight him. Later, when he got outside, Johnson confronted him, repeatedly telling him, "[y]ou know what you did inside." In response, Leblanc told Johnson he did not know what he was talking about. Leblanc testified that he did not know the defendant was going to be there waiting for him when he got to the back of the parking lot. Leblanc started running, trying to get away, as the defendant punched him. Leblanc did not see the shooting, as he ran and did not turn back after being rescued by Allen.

Brooklyn Ringo, a witness who videoed part of the parking lot fight with her cell phone, testified that she did not see Allen start a fight before he was shot. She stopped videoing when she heard the gunshot. Jordan Jones, who also witnessed and videoed the parking lot fight and shooting with his cell phone, testified that two males were with Leblanc when the defendant and five other guys with him started chasing Leblanc. Jones, who was about twenty-five to thirty feet away from the fight, testified that Allen did not do anything to start a fight with the defendant or to provoke the defendant. Jones identified Leblanc, Allen, and the defendant in his cell phone footage and narrated the video. As Jones noted, the defendant took a swing at Leblanc, and Leblanc got trapped next to the fence. Allen then got involved, at which point he was hit in the back of the head and trapped next to the fence, as Leblanc got away. Jones testified that Allen hit the defendant and attempted to lift the defendant up before the defendant got out of his grasp, backed away, and within seconds pulled the gun out from his waist. On cross-examination, Jones clarified that while he may have previously used the phrase "tried to body slam" he was actually referring to Allen's attempt to pick the defendant up. Jones confirmed that there was a significant distance between the defendant and Allen when the defendant pulled the gun from his waist, which was followed by loud bangs. The video taken by Jones with his cell phone is consistent with Jones's trial testimony.

6

Allen Minor, who was with the defendant at the bar that night, testified that when he was about to leave, someone told him about the fight. Minor grabbed a bat from his vehicle and went to the area where the fight was taking place outside. Minor testified that he was going to help the defendant in the fight, but before he could swing his bat, he saw the defendant shoot Allen. Minor denied that Allen did anything to provoke the defendant before the defendant shot him. On cross-examination, he confirmed that he saw Allen hit the defendant "once or twice." He further confirmed that Allen and Leblanc were substantially outnumbered during the fight.

Marc Genre, an expert witness in digital forensics who enhanced video footage in this case, testified while the State played videos and displayed still photographs taken from footage. One of the still photographs Genre took from video footage of the parking lot fight shows a black object protruding from the defendant's waistline. Genre confirmed that there was no such object visible on the defendant during his earlier rap performance. As to the moments before the defendant shot Allen, Genre confirmed that he did not see Allen do anything to provoke the defendant to shoot him. Major Zack Simmers, who reviewed surveillance footage and located the defendant's truck after the shooting, confirmed that the defendant fled the scene after the altercation, without explaining or claiming to the police that he shot Allen because he was provoked.

A reduction of second degree murder to manslaughter requires that the killing be committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31(A)(1). Provocation testimony presents an issue of credibility. **Mellion**, 2021-1116 at p. 8, 342 So.3d at 47. As noted, the defendant contends Allen provoked him to shoot him, thus mitigating the homicide to manslaughter.

7

We find that the jury could have reasonably concluded that there was a lack of provocation sufficient to deprive an average person of his self-control and cool reflection. The witnesses all testified that Allen did not provoke the defendant. Rather, they confirmed that Allen was blocked by the fence and outnumbered when he was shot. Video footage was wholly consistent with trial testimony. While Allen may have hit and grabbed the defendant, first during his efforts to assist Leblanc and then in an attempt to defend himself, these circumstances do not constitute provocation sufficient to cause an average person to lose control and take lethal action. Further, testimony of Ainsworth and Genre, as well as video evidence, showed that the defendant did not appear to be armed while he was inside the bar. Inconsistent with sudden passion or heat of blood, a rational juror could have concluded that the defendant armed himself in preparation for the parking lot fight, thereby escalating the situation. Finally, flight and attempt to avoid apprehension indicate consciousness of guilt, and therefore, are circumstances from which a juror may infer guilt. **Southall**, 2022-0746 at p. 12-13, ___ So.3d at ___, 2023 WL 3862595 at *6. As noted above, the defendant fled the scene without giving any explanation to the police for the shooting. Thus, under the facts and circumstances presented in this case, we cannot say that the jury was irrational in determining that the defendant failed to prove the mitigating factors by a preponderance of the evidence. See **Ordodi**, 2006-0207 at p. 14, 946 So.2d at 662.

An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis presented to, and rationally rejected by, the jury. See **State v. Calloway**, 2007-2306, p. 1-2, 10 (La. 1/21/09), 1 So.3d 417, 418, 422 (per curiam). Viewing the evidence in the light most favorable to the prosecution, we find that based on the record before us, a rational trier of fact could

have found that the State proved beyond a reasonable doubt all of the elements of second degree murder. Accordingly, assignment of error number three lacks merit.

## DISQUALIFICATION OF PROSPECTIVE JUROR

In assignment of error number one, the defendant argues the trial court misapplied a law no longer in effect to exclude an otherwise qualified juror. He argues he was irreparably injured by the trial court's error, as it deprived him of a potentially beneficial juror.

An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La. Const. art. I, § 17(A); La. Code Crim. P. art. 786. The purpose of voir dire examination is to determine prospective jurors' qualifications by testing their competency and impartiality and discovering bases for intelligent exercise of cause and peremptory challenges. **State v. Diggs**, 2019-0956, p. 3 (La.App. 1 Cir. 12/27/18), 294 So.3d 487, 491, writ denied, 2020-00181 (La. 7/24/20), 299 So.3d 69. Louisiana Code of Criminal Procedure article 401 outlines the qualifications for jurors. In particular, subsection (A)(5) of the Article prohibits from serving on a jury those who are under indictment, incarcerated under an order of imprisonment, or on probation or parole for a felony offense *within the five-year period* immediately preceding the person's jury service. The question of a juror's qualifications is addressed to the sound discretion of the trial judge. Therefore, the trial court's rulings will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion. **State v. Folse**, 2018-0152, p. 14 (La.App. 1 Cir. 9/21/18), ___ So.3d ___, ___, 2018 WL 4520465, *6, writ denied, 2018-1740 (La. 4/22/19), 268 So.3d 296.

In this case, the defendant is correct in that during voir dire, the trial court mistakenly read the version of La. Code Crim. P. art. 401(A)(5) in effect prior to its amendment by 2021 La. Acts No. 121, § 1, which prohibited any person under

9

indictment or convicted of a felony for which he had not been pardoned by the governor from serving on a jury.[3] The prospective juror at issue, Ryan Thomas, came forward and informed the trial court that he had a felony conviction for "cocaine" from "2007 something like that." The trial court excused Thomas without objection or any further questioning by the parties.

We note that it is unclear whether Thomas actually qualified as a juror under the current law, as he was not questioned as to whether he had been released from incarceration or was on probation or parole for his felony offense within five years of the trial. See La. Code Crim. P. art. 401(A)(5) (as amended). The rule is stringent that if the defendant does not interrogate as to the qualifications of the juror, he cannot raise the issue of qualification on appeal. See **State v. Oliver**, 193 La. 1084, 1092, 192 So. 725, 727 (La. 1939); see also **State v. Zeno**, 2014-0325, p. 17 (La.App. 1 Cir. 9/19/14), 155 So.3d 4, 17, quoting **State v. Baxter**, 357 So.2d 271, 274 (La. 1978) ("the defense should not be permitted to sit by during voir dire examination and learn as little as possible about a prospective juror, and then, after an unfavorable verdict, discover or seek out a ground for disqualification and demand a new trial"). Further, as the defendant now concedes, he failed to object to the trial court's ruling excusing the prospective juror. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. Code Crim. P. art. 841(A). The purpose behind this rule is to make sure that the trial judge is apprised of the claim and given an opportunity to correct the alleged error. **State v. Odom**, 2003-1772, p. 11-12 (La.App. 1 Cir. 4/2/04), 878 So.2d 582, 591, writ denied, 2004-1105 (La. 10/8/04), 883 So.2d 1026; see also **State v. Campbell**, 2006-0286, p. 84-85 (La. 5/21/08), 983 So.2d

---

[3] The prior version of the statute prohibited a person indicted for a felony or convicted of a felony for which he has not been pardoned by the governor from serving on a jury, regardless of the date of the indictment or the date of the expiration of the incarceration, probation, or parole. See La. Code Crim. P. art. 401(A)(5) (prior to amendment by 2021 La. Acts No. 121, § 1).

810, 864, cert. denied, 555 U.S. 1040, 129 S.Ct. 607, 172 L.Ed.2d 471 (2008) (where defendant did not object to the court's granting of the State's challenges for cause, any complaint in that regard was waived on appeal); **State v. Newberry**, 2016-0147, p. 19-20 (La.App. 1 Cir. 9/16/16), 2016 WL 4942429, *10 (unpublished) (where defendant did not object to court's failure to excuse jurors who showed evidence of ill health, the issue was not preserved for review).[4] Accordingly, we find assignment of error number one lacks merit or is otherwise not subject to appellate review.

## DENIAL OF MOTION FOR CONTINUANCE

In assignment of error number two, the defendant argues the trial court abused its discretion and committed reversible error in denying his motion to continue the trial. He contends that due to the ruling, he was denied counsel of his choosing.

The trial court has much discretion in deciding to grant or deny a motion for a continuance, and a reviewing court will not disturb such a determination absent a clear abuse of that discretion and a specific showing of prejudice caused by the denial. La. Code Crim. P. art. 712; **State v. Strickland**, 94-0025, p. 23 (La. 11/1/96), 683 So.2d 218, 229; **State v. Holcombe**, 2015-1615, p. 5 (La.App. 1 Cir. 4/15/16), 2016 WL 1535165, *3 (unpublished), writ denied, 2016-1043 (La. 5/12/17), 219 So.3d 332. The denial of a motion for continuance, which motion is based on the ground of counsel's lack of preparedness, does not warrant reversal unless counsel demonstrates specific prejudice resulting from the denial or unless

---

[4] The defendant claims this issue should be reviewed as a patent error. However, on patent error review we are limited to a review of the pleadings and proceedings, and the issue presented by the defendant is outside the scope of a patent error review. See La. Code Crim. P. art. 920(2); **State v. Johnston**, 546 So.2d 1231, 1234 (La.App. 1 Cir. 1989). The defendant also argues that "[s]ummary removal of a juror who is qualified under the current law is a structural error that requires reversal." We find that the defendant's contention that this issue amounts to a structural error is also unfounded. See **State v. Langley**, 2006-1041, p. 6 (La. 5/22/07), 958 So.2d 1160, 1164, cert. denied, 552 U.S. 1007, 128 S.Ct. 493, 169 L.Ed.2d 368 (2007); **State v. Kitts**, 2018-1432, p. 6, n.6 (La.App. 1 Cir. 2/22/19), 2019 WL 851177, *3, n.6 (unpublished), writ denied, 2019-00424 (La. 1/28/20), 291 So.3d 1057.

11

the preparation time is so minimal as to call into question the basic fairness of the proceeding. **State v. Charrier**, 2012-0245, p. 4 (La.App. 1 Cir. 9/21/12), 2012 WL 4335920, *2 (unpublished), writ denied, 2012-2309 (La. 4/12/13), 111 So.3d 1018. Moreover, there is no constitutional right to make a new choice of counsel, with the attendant necessity of a continuance and its disrupting implications to the orderly trial of cases. **State v. Bridgewater**, 2000-1529, p. 20-21 (La. 1/15/02), 823 So.2d 877, 896, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003).

On October 17, 2022, attorney Kerry Cuccia filed a motion to enroll and to continue the trial date, then set for October 26, 2022, which the trial court denied without a hearing. This court granted the defendant's writ application requesting a hearing on the motion. **State v. Campbell**, 2022-1168, p. 1 (La.App. 1 Cir. 10/21/22), 2022 WL 12394433, *1 (unpublished). On remand, the trial court denied the motion for a continuance after a hearing held the day before trial. The trial court further stated the motion to enroll would not be denied, and that Cuccia could enroll as co-counsel, which Cuccia declined. Thomas D'Amico, the private counsel who represented the defendant in the previous trial on this matter that ended in a mistrial, was reappointed by the public defender's office, and proceeded to represent the defendant in the instant trial.

The defendant notes Cuccia timely filed the motion, as he needed time to prepare for the case. He contends that due to the denial of his motion to continue, he was forced to proceed to trial under the representation of D'Amico, who failed to exonerate him in the original trial and did not want to represent him on retrial. We find that the defendant has failed to show any prejudice resulting from the denial of his motion to continue. The record reflects that D'Amico was initially reluctant to re-represent the defendant on retrial, but then agreed to do so. In denying the motion to continue, the trial court noted that it did not see any

12

disadvantage to the defendant by being re-represented by his initial attorney of choice, who was experienced in trying the case. We agree with the trial court's assessment. The defendant has not presented any information to suggest that D'Amico's representation at retrial was ineffective or that he did not receive a fair retrial in this case. There is no reason for this court to conclude that D'Amico, who had already tried the case once, was ill-prepared to try the case again. Thus, the defendant has shown no prejudice. On the record before us, we cannot conclude that the trial court erred, or abused its discretion, in denying the defendant's motion for a continuance. Thus, we find no merit in assignment of error number two.

## DENIAL OF PAROLE ELIGIBILITY

In assignment of error number four, the defendant argues that parole was illegally restricted in this case. He notes that he was seventeen years old at the time of the offense, and the indictment was filed after August 1, 2017, making him automatically eligible for parole consideration under La. R.S. 15:574.4(F).

A conviction for second degree murder in Louisiana mandates a sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:30.1(B). However, the United States Supreme Court in **Miller v. Alabama**, 567 U.S. 460, 489, 132 S.Ct. 2455, 2475, 183 L.Ed.2d 407 (2012), held that a sentencing scheme that mandates life imprisonment without the possibility of parole for juvenile offenders violates the Eighth Amendment prohibition against cruel and unusual punishment.

The Louisiana legislature specifically amended La. R.S. 15:574.4 to codify the holding in **Miller**. Pursuant to La. R.S. 15:574.4(F)(1), any person serving a sentence of life imprisonment for a conviction of second degree murder who was under the age of eighteen years at the time of the commission of the offense and whose indictment for the offense is on or after August 1, 2017, *shall* be eligible for

parole consideration if certain conditions are met, including serving twenty-five years of the sentence imposed.

In this case, the defendant, whose date of birth is December 15, 2003, was indicted for second degree murder on September 23, 2021, when he was seventeen years old. Thus, the defendant falls under La. R.S. 15:574.4(F)(1), and the record reflects that he was illegally sentenced to life imprisonment without the benefit of parole. Accordingly, we find this assignment of error has merit. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La. Code Crim. P. art. 882(A); **State v. Thompson**, 2022-0314, p. 20 (La.App. 1 Cir. 1/10/23), 2023 WL 142384, \*11 (unpublished).

Due to the foregoing, the defendant's conviction of second degree murder is affirmed, but the sentence is amended to reflect life imprisonment with the benefit of parole consideration after serving twenty-five years, pursuant to La. R.S. 15:574.4(F). This matter is remanded to the trial court with instructions to correct the defendant's commitment order and to transmit the amended commitment order to the Department of Corrections. The Department of Corrections is ordered to revise the defendant's master prison record to reflect that his sentence is no longer without benefit of parole and, in accordance with the criteria in La. R.S. 15:574.4, to reflect an eligibility date for consideration by the Board of Parole.

**CONVICTION AFFIRMED, SENTENCE AMENDED AND AFFIRMED AS AMENDED, REMANDED WITH INSTRUCTIONS.**